In the Interest of P.M., S.M. and S.M., Minor Children.

JUVENILE OFFICER, Respondent,

v.

B.M. and W.S.M., Natural Parents, Appellants.

Nos. 43185 to 43187.

Missouri Court of Appeals, Western District.

Jan. 8, 1991.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

Margaret E. Dean, Kansas City, for appellants.

Anne E. Rauch, Kansas City, for respondent.

Dale Godfrey, Kansas City, guardian ad litem for juveniles.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

BERREY, Judge.

W.M., father, and B.M., mother, appeal from an order of the trial court terminating their parental rights to their three children, P.M., S.M. and S.M.

Affirmed.

Appellants present three points on appeal: (1) that the trial court erred in ordering termination of parental rights because the children had not been adjudicated neglected or abused, the grounds alleged in the termination petitions; (2) that the trial court erred in finding that an act of emotional abuse was committed toward the children's sibling; and (3) that the trial court erred in its termination of parental rights as such was against the weight of the evidence.

Initially we note that the statement of facts in appellants' brief is in violation of Rule 84.04(c) which requires a "fair and concise" statement of facts. The brief is so deficient in regard to stating the case fairly as to warrant dismissal. Given the gravity of any termination of parental rights case we will nevertheless undertake to review the issues presented by appellants.

J.M., the seven-week old son of W.M. and B.M., died on March 27, 1988, of severe protein calorie malnutrition, dehydration and bronchopneumonia. An autopsy performed upon J.M. showed that he had been "generally emaciated and dehydrated" with a "complete loss of subcutaneous fat deposits."

At the time of J.M.'s death, W.M. and B.M. had three other children, P.M., J.M.'s surviving twin brother, and two girls, S.M. and S.M. P.M. was hospitalized at Children's Mercy Hospital for failure to thrive, malnutrition and emotional deprivation. His weight at that time was less than his birth weight. The two girls were dirty and infested with nits and lice. The home in which the surviving children were found was filthy.

Petitions were filed by the Juvenile Officer pursuant to § 211.031, RSMo 1986, seeking jurisdiction over P.M., S.M. and S.M. These petitions alleged that the children were without proper care, custody and support. These petitions alleged that J.M. had died of malnutrition, that P.M. was malnourished, dehydrated and weighed less than he did at birth, and that the home where the children were found was filthy and malodorous. The allegations contained in the petition were admitted by W.M. and B.M. The trial court found the children to be in need of care and treatment, committing them to the custody of the Department of Family Services.

On July 21, 1989, W.M. and B.M. were convicted by a jury of endangering the welfare of a child, P.M., and of the involuntary manslaughter of J.M. W.M. is currently on probation and B.M. is serving an eight year sentence.

Termination of parental rights petitions were filed on February 5, 1990, pursuant to § 211.447, RSMo 1986. Testimony presented at the hearing showed a rocky relationship between the parents. It appeared that the housekeeping problems were ongoing despite W.M.'s testimony that the house was filthy because they had just moved in the night before J.M.'s death.

Kim Cox, a DFS social worker, testified that "from my contacts with the [Ms] that they did know that the children were ill and they did know that the children needed medical attention." Cox was originally assigned to W.M. and B.M.'s case because B.M. had taken one of the children to Children's Mercy Hospital where maggots were discovered in the folds of the child's skin. B.M. did not know what the maggots were.

Kerri Diehl, the DFS worker who took over the case, testified that the children were doing well in foster care and had emotional ties to their foster parents. The foster parents hoped to adopt all the children. The trial court terminated the parental rights of W.M. and B.M. as to P.M., S.M. and S.M.

■ In any termination of parental rights, the primary concern must be the best interests of the child. *In Interest of*

*M.E.W.*, 729 S.W.2d 194 (Mo. banc 1987). The state must prove its case based upon clear, cogent and convincing evidence. *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985). The decree will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* Review is done in the light that is most favorable to the order of the trial court. *In Interest of M.L.W.*, 788 S.W.2d 759, 762 (Mo.App.1990).

■ Appellants first argue that the trial court erred in ordering termination because the children had not been adjudicated neglected or abused, the grounds alleged in the petition seeking termination.

The first amended petitions for termination of parental rights stated that they were instituted under § 211.447, RSMo. These petitions each alleged that, "The child has been adjudicated to have been abused or neglected and a sibling, [J.M.], died on or about March 27, 1988, as a result of severe act or acts of physical and emotional abuse, for which death both parents have been convicted of manslaughter...." Appellants argue that the petitions invoking jurisdiction initially over the three children alleged that they were "without proper care, custody and support" and that the judgment on these petitions sustaining the allegations therein was not an adjudication of abuse or neglect.

■ The petitions for termination were filed pursuant to § 211.447, RSMo 1986, which reads in part:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exists:

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the

following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to . consistently provide such care, custody and control;

(c) *A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent,* including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development;

(Emphasis added). Appellants correctly argue that two separate proceedings are contemplated by § 211.447.2(2), RSMo 1986: (1) An adjudication of neglect or abuse; and (2) a termination proceeding. *See In Interest of L.G.,* 764 S.W.2d 89 (Mo. banc 1989), *cert. denied,* — U.S. —, 109 S.Ct. 3196, 105 L.Ed.2d 704 (1989); *In Interest of D.L.D.,* 701 S.W.2d 152 (Mo.App.1985).

In the instant case the proper steps were taken. There is no question that these children had been adjudicated as abused or neglected in the initial proceeding. The initial petitions were sustained by the trial court and W.M. and B.M. admitted the allegations contained therein. To reiterate, these allegations included such things as the filthy and malodorous house, the lice and nit infestation of the children, the

death of J.M. of malnutrition and the poor condition of P.M.

A definition of neglect found in § 210.110, RSMo 1986, is useful here where neglect is defined as the "failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for his well-being...." § 210.110(5), RSMo 1986. The trial court at the original proceedings to invoke jurisdiction made such a determination finding the children to be "in need of care and treatment." Appellants' Point I is denied.

■ Appellants' Point II argues that the trial court erred in finding that a severe act of physical and emotional abuse was committed towards the children's sibling because no evidence was presented on the issue of abuse. Termination of parental rights can be based upon acts of abuse committed, "toward the child or any child in the family by the parent." § 211.447.2(2)(c), RSMo 1986. The underlying rationale for allowing termination to proceed based upon the abuse of a sibling is best stated in *D.G.N. v. S.M.,* 691 S.W.2d 909, 912 (Mo. banc 1985), where the court observes: "We do not believe that the actual physical harm must be present. 'To require [the] child to suffer the fate of his siblings prior to termination of parental rights would be a tragic misapplication of the law.'" (*quoting, In Interest of J.A.J.,* 652 S.W.2d 745, 749 (Mo.App.1983)).

Evidence of abuse was introduced at the hearing, the most telling of which consisted of photographs of J.M.'s pathetic, wasted body. Photographs taken of P.M. graphically depict his debilitation. Medical records from Park Lane and J.M.'s autopsy report were introduced. Copies of the judgments against W.M. and B.M. for endangering the welfare of a child and involuntary manslaughter were admitted into evidence. In short, the evidence presented on the subject of abuse was overwhelming. Appellants' Point II is denied.

■ Finally, appellants attempt to argue that the order of termination was made

against the weight of the evidence. Appellants attempt to pick and choose evidence most favorable to their cause, ignoring evidence to the contrary. As the evidence outlined elsewhere in this opinion shows, the greater weight evidence presented supported the order of termination. Appellants' Point III is denied.

Judgment affirmed.

All concur.