**In the Interest of S.M., T.M., W.M., J.M., and A.M., Juveniles.**

**Doug BEEVERS, Juvenile Officer, Respondent,**

v.

**M.K.M., Mother–Appellant.**

**No. 17878.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 19, 1992.

Kenneth A. Wagoner, Brill, Moore & Wagoner, P.C., West Plains, for appellant.

Stan Smith, West Plains, for respondent.

MAUS, Judge.

This appeal pertains to the five children of J.M., father, and M.K.M., mother. On the 27th day of April, 1990, the Juvenile Division of the Circuit Court of Howell County (Juvenile Division) terminated the parental rights of J.M. and M.K.M. to the two older children, S.M., a daughter, and T.M., a son. It declined to terminate those rights in respect to the three younger children. On October 21, 1991, the Juvenile Division, following a hearing upon a subsequent petition, terminated the parental rights of J.M. and M.K.M. to the three younger children. M.K.M. appeals. The following is a synopsis of the procedural history and evidence.

J.M. and M.K.M. began living together about 1974. J.M. was approximately 21 years old. M.K.M. was approximately 18 years old. They are natives of the Howell County community. Under circumstances not shown by the evidence, their first child, Sammy, died a "crib death" in Iowa in 1976.

J.M. and M.K.M. returned to Howell County. They then had five children, whose names (here initialed) and birthdays are:

S.M., a daughter, born September 20, 1980;

T.M., a son, born May 28, 1982;

W.M., a son, born December 6, 1985;

J.M., a daughter, born September 28, 1987;

A.M., a daughter, born November 21, 1988.

J.M. and M.K.M. were married in April 1989.

Little is shown concerning the father, J.M. At one time he worked in logging. He became ill in approximately 1988 and stopped working. He did not work again until 1991, when he started working at a sawmill. J.M. is an alcoholic. His limited participation on several occasions in treatment programs was unsuccessful.

M.K.M., the mother, was a special education student. Her IQ is 77. She was described as having "borderline intelligence". An independent professional social worker, with a Masters in social work, counseled with M.K.M. on several occasions. The parties stipulated the witness was a "well-qualified social worker." This witness testified M.K.M. had no parental skills and during counseling made no progress in achieving such skills. M.K.M. has never worked. The family subsisted on public funds.

On June 4, 1983, the parents took S.M. and T.M. to M.K.M.'s parents. T.M. was very ill. He was undernourished, nutritionally anemic, had a high fever and a large linear bruise on his face. S.M. had a knot on her forehead and fingernail scratches on her forehead, around one eye and on one hip. The grandparents took T.M. to a physician. T.M. was subsequently hospitalized for about a month.

The Juvenile Division assumed jurisdiction of S.M. and T.M., the two children then in being. In 1985, those children were re-

turned to the custody of the parents. The Juvenile Division relinquished jurisdiction of them.

On October 31, 1988, the Division of Family Services received a "hotline" call concerning J.M.'s sexual abuse of S.M., and physical abuse of T.M. The Juvenile Division again took custody of those children. In November 1988, the Juvenile Officer filed separate petitions in respect to each of the children for an order that each was a neglected child and in need of care and treatment. The petition in respect to S.M. alleged that she had been a victim of physical and sexual abuse by her father and that her mother had knowledge thereof and did nothing to prevent it. The petition in respect to T.M. alleged that he had been physically abused by his father. The petitions in respect to the other children alleged the abuse of T.M. and S.M., that the mother did not provide protection and each child was threatened with physical/sexual abuse. On February 23, 1989, J.M. and M.K.M., with their appointed counsel,[1] appeared before the Juvenile Division and denied the allegations of the petitions, but confessed that the Juvenile Officer was able to adduce sufficient evidence to warrant the court in assuming jurisdiction. The court did so.

On August 24, 1989, the Juvenile Officer filed a petition to terminate the parental rights of J.M. and M.K.M. in respect to each of the five children. A hearing was held upon that petition on January 29, 1990, and February 15, 1990. On April 27, 1990, a judgment was entered. That judgment included the following findings.[2]

"The Court finds by clear and convincing evidence that termination of the parental rights of both parents as to all five children would serve the best interests of the children. The father has sexually abused S.M., has physically abused T.M., and the mother has been unable or unwilling to prevent these acts. Despite her knowledge of these facts, the mother M.M. [M.K.M.] *married* the father J.M.

at the inception of these proceedings, having theretofore simply cohabited with him. Both parents exhibit significant mental limitations which impair them from caring adequately for the children. Despite continuing good-faith efforts by the Missouri Division of Family Services over a period of many years, no significant improvement in the parenting skills of J.M. or M.M. has occurred.

The two next youngest children, W.M. and J.M., have been neglected by both parents. Their environment has been one of squalor and inattention to nutritional and medical needs. Neither parent seems able to comprehend these needs nor to attend to them. The youngest child, A.M., has never lived in the physical custody of the parents and has not been abused or neglected by them, but would be considered 'at risk' if placed in their custody for the reasons earlier mentioned. Meanwhile the Missouri Division of Family Services is able to offer suitable adoptive placements for these children and termination of the parental rights of J.M. and M.M. would serve their best interests by making them available for adoption." (Emphasis in original.)

Those findings were abundantly supported by the evidence. The court then observed that § 211.447 RSMo Cum.Supp.1991 authorizes the termination of parental rights only upon a finding of one of three statutory bases: Abandonment—§ 211.447.2(1); Adjudication of Abuse or Neglect—§ 211.447.2(2); and Failure to Remedy Conditions—§ 211.447.2(3). The court concluded the evidence did not establish "abandonment" or "failure to remedy conditions". However, the court found that the judgment in 1983, by which the Juvenile Division placed the two older children (the only children then in being) in judicial custody was a prior adjudication of abuse and neglect. It further found that the 1989 judgment placing those two children in judicial

---

1. It must be noted that appointed counsel for M.K.M. has diligently represented her in keeping with the finest traditions of the profession.

2. The well-drafted judgments in the proceedings involved in this appeal reflect careful consideration of the evidence and applicable law.

custody was also an adjudication of their abuse and neglect. However, it found the 1989 judgment, assuming jurisdiction of the three younger children, was not an adjudication that those children had been abused or neglected.[3] The judgment then concluded:

> "The Court must therefore find and conclude, although with reluctance, that the jurisdictional prerequisite of Sec. 211.447.2(2) is not satisfied as to the children W.M., J.M., and A.M. Accordingly, the Petition for Termination of Parental Rights must be dismissed as to these three children."

The Juvenile Division then proceeded to make extensive findings upon the relevant factors, including those required by § 211.447.3 RSMo Cum.Supp.1991. The judgment concluded:

> "WHEREFORE, It is the JUDGMENT of the Court that the parental rights of J.M. and M.M. in and to the minor children S.M. and T.M. are hereby terminated and held for naught. Pending further order of the Court, legal and physical custody of S.M. and T.M. is placed in the Missouri Division of Family Services subject to the continuing jurisdiction of the Juvenile Court. The Petition is dismissed without prejudice with respect to the minor children W.M., J.M., and A.M., but jurisdiction is retained."[4]

Thereafter, on November 26, 1991, the Juvenile Officer filed a petition to terminate the parental rights of J.M. and M.K.M. as to the three younger children. This petition alleged in detail the facts leading to the assumption of jurisdiction of those children by the Juvenile Division which established that conditions of a potentially harmful nature to the children continue to exist. J.M. consented to the termination of his parental rights as to those three children. Following a hearing on October 3, 1991, the Juvenile Division entered a judgment which included the following findings. That the condition which led to the assumption of jurisdiction over the three younger children was that the two older siblings had been subjected to physical and sexual abuse, causing the three younger children to be at risk. It further found that such condition no longer existed.[5] However, the court reached the conclusion that "conditions of a potentially harmful nature continue to exist" and that M.K.M. suffers significant mental and emotional limitations and is not equipped to meet the needs of the children. The Juvenile Division then made findings upon the factors mandated by §§ 211.447.2(3) and 211.447.3 RSMo Cum.Supp.1991. The judgment concluded: "The best interest of all three children strongly requires that the parental rights of both natural parents be terminated." It then terminated the parental rights of J.M. and M.K.M. as to the three younger children.

M.K.M.'s first point is that the Juvenile Division erred in terminating her parental rights as to the two older children because,

---

**3.** "Appellants correctly argue that two separate proceedings are contemplated by § 211.447.2(2), RSMo 1986: (1) An adjudication of neglect or abuse; and (2) a termination proceeding. *See In Interest of L.G.*, 764 S.W.2d 89 (Mo. banc 1989), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3196, 105 L.Ed.2d 704 (1989); *In Interest of D.L.D.*, 701 S.W.2d 152 (Mo.App.1985)." *In Interest of P.M.*, 801 S.W.2d 773, 776 (Mo.App.1991).

**4.** "[I]t follows that the present judgment could not be construed to preclude the filing and adjudication of a subsequent petition for termination of parental rights as to this child based on other statutory grounds or, upon the same ground proved by additional evidence." *R.D. by Reine v. I.D.*, 778 S.W.2d 848, 850 (Mo.App. 1989).

**5.** "Section 211.447, RSMo 1986, supports this reading of section 211.447.2(2)(i)b, RSMo Supp.

1984 (repealed). The current statute retained the failure to rectify provision, 211.447.2(3), RSMo 1986, with the four-step inquiry from the 1984 version. The 1986 statute has clarified and expanded the conditions to be rectified section of the 1984 version apparently in response to the confusion in its interpretation. The 1986 statute requires the consideration of those 'conditions which led to the assumption of jurisdiction ... or conditions of a potentially harmful nature [that] continue to exist.' § 211.447.2(3), RSMo 1986. The new statute replaces the reference to section 211.181, the disposition order, with an explicit statement that harmful conditions not originally considered could form the basis of the termination." *In Interest of M.E.W.*, 729 S.W.2d 194, 196 (Mo. banc 1987). (Omission in original.)

in the particulars stated in the point, there was no clear, cogent and convincing evidence that J.M. sexually abused S.M. or that M.K.M. knowingly permitted such abuse. The Juvenile Officer contends consideration of this point is barred because the 1990 judgment of termination was a final judgment and M.K.M. did not timely appeal therefrom. M.K.M. replies that the *1990* judgment was not final in that "it adjudicated fewer than all the claims or the rights and liabilities of fewer than all of the parties." She cites Rule 74.01(b). She argues that the dismissal of the petition to terminate as to the three younger children did not result in a final judgment because the Juvenile Division retained jurisdiction of those three younger children. M.K.M.'s position has no merit for two reasons.

First, the statutes governing a proceeding for the termination of parental rights contemplates there will be a separate proceeding or case for each child.

"The petition for termination of parental rights shall be filed in the juvenile court which has prior jurisdiction over the child or, if no such prior jurisdiction exists, then the petition shall be filed where the child is, and shall include:

.    .    .    .    .

If there is more than one child in the family and a termination of parental rights petition is being or has been prepared for each child, the court may join the cases for disposition in one proceeding; provided, however, that joinder of the cases is found to be in the best interests of each child."    § 211.452.1.2. This concept is in harmony with the statute providing for appeals from judgments of the Juvenile Division.

"An appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of this chapter and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend. An appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him...." § 211.261.

■ The joinder of the five children as the subject matter of the petition to terminate parental rights and for disposition without objection by any party, and with the tacit approval of the Juvenile Division, does not cause the judgment as to each child to be less than a final judgment.

■ Second, M.K.M. misconceives the effect of that portion of the 1990 judgment providing that the Juvenile Division retained jurisdiction of the three younger children.

"Section 211.031 RSMo Cum.Supp. 1989, which provides for the jurisdiction of the juvenile court in a neglect and/or abuse adjudication does not exist in competition with § 211.447 RSMo Cum.Supp. 1985, which allows for the permanent severance of the parent-child relationship. *These two statutory sections address different circumstances* and therefore cannot be considered to be the same cause of action having res judicata or estoppel effect. Further, the Missouri Supreme Court has determined that a prior neglect adjudication may be used as partial support for a termination order. *In Interest of L.G.*, 764 S.W.2d 89, 93–94 (Mo. banc 1989)." *W.G. v. P.L.G.*, 801 S.W.2d 85, 89 (Mo.App.1990). (Emphasis added.)

The 1990 judgment terminated the parental rights of J.M. and M.K.M. as to the two older children but denied such relief as to the three younger children. It disposed of all issues and all parties to that proceeding or case to terminate parental rights. Even in the absence of an express reservation of jurisdiction over the three younger children, the Juvenile Division would retain jurisdiction over them as a consequence of adjudication of neglect and abuse under § 211.031 RSMo Cum.Supp.1991.[6]

**6.** "But as we said in *In re R.S.P.*, 619 S.W.2d 863, 865 (Mo.App.1981), reversal here does not mean that the juvenile court has lost its jurisdiction over these three children. That jurisdiction continues under the orders originally entered with respect to each child in the § 211.031 proceedings." *In re S.P.W.*, 707 S.W.2d 814, 827 (Mo.App.1986).

For the reasons stated, the judgment terminating the parental rights of J.M. and M.K.M. as to the two older children became final thirty days after it was entered. See *In Interest of D.J.B.*, 704 S.W.2d 217 (Mo. banc 1986).

■ M.K.M.'s second point concerns the 1991 judgment terminating her parental rights to the three younger children. The relevant portion of § 211.447 RSMo Cum. Supp.1991 provides: "2. The juvenile court may terminate the rights of a parent to a child ... when it appears by clear, cogent and convincing evidence that .... ... (3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, *or conditions of a potentially harmful nature continue to exist*, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home ...." § 211.447.2(3) RSMo Cum.Supp. 1991. (Emphasis added.) The 1991 judgment of termination was, in part, based upon the following finding:

"The Court finds that conditions of a potentially harmful nature do continue to exist. The mother suffers significant mental and emotional limitations and is not equipped, without significant assistance from third parties, to meet the needs of these children. While there is evidence she has made some improvement toward overcoming her dependent personality type and her lack of homemaking, child-rearing, and workplace skills, attainment of an independent lifestyle will require at least five years." By her second point, M.K.M. contends the evidence is insufficient to support the termination because she divorced J.M., has followed the directives of the Division of Family Services, has attended counseling sessions, and recently bought a mobile home for living quarters for herself and the children.

The Juvenile Division recognized those facts. "The court notes, but is not persuaded by the seemingly short-lived improvement in D.M.M.'s circumstances immediately following the filing of the petition for termination." *In Interest of J.M.*, 815 S.W.2d 97, 103 (Mo.App.1991). The fact M.K.M. followed some of the suggestions of those who counseled with her does not establish that no basis for termination exists.

"Moreover, full compliance with the terms of a plan may be insufficient where the parents make no commitment to change the course of their conduct which prevents the return of their children." *In Interest of C.M.M.*, 757 S.W.2d 601, 606 (Mo.App.1988).

M.K.M. has failed to recognize the "conditions of a potentially harmful nature" that continue to exist. Those conditions embraced more than potential abuse by J.M. The fundamental potentially harmful condition was M.K.M.'s lack of appreciation of even the basic needs of the children. Regardless of whether or not this was because of her limited mental ability or absence of training, it resulted in her utter neglect of the children. Her complete neglect was demonstrated by the fact that when W.M., then almost three years of age, and J.M., then thirteen months of age, were taken from her custody on November 4, 1988, neither child would talk, was potty trained, nor could feed themselves. She permitted them to be dirty and live in filthy surroundings. She did not provide them with an adequate diet. She gave them no parental training.

After the children were removed from her custody, M.K.M. lived with J.M. until their separation in April 1990. She then moved in with her parents. She made little effort to be employed. She acquired no experience in managing a home. She made arrangements to buy the mobile home only on the eve of trial and with the help of a neighbor who was going to rent to her a place to put it. She made the down payment with accumulated back installments of SSI benefits. Her only anticipated income is from public assistance. She of-

fered no evidence to suggest she has progressed in acquiring the ability to provide a clean home, an adequate diet and parental care for the children. It is appropriate to note the comment of the court in a surprisingly similar case:

> "It was up to the trial court to assess this evidence and weigh the credibility of the witnesses in order to determine whether D.G.N., Jr. was, in fact, no longer in imminent danger from an unsafe home environment. The trial court rejected the mother's plea and we decline to disturb its ruling. The substantial evidence of the savage abuse committed on J.M. and C.M. suggests a dangerous home environment and such evidence is not easily rebutted by proof of how witnesses expect the mother to behave in the future toward her child, especially when there is no evidence indicating an intervening normal parent-child relationship." *D.G.N. v. S.M.*, 691 S.W.2d 909, 913 (Mo. banc 1985).

The standard by which this court is to review the evidence is well established.

> "In a court-tried case, the trial judge must decide that the evidence clearly, cogently, and convincingly demonstrates the existence of one of the conditions forming the basis for the termination petition. The judge must also determine whether termination would be in the best interest of the child, with the preference toward leaving the child with the natural parent. While the reviewing court must examine whether the trial court applied the correct standard of proof, '[d]ue regard is given for the opportunity of the trial court to judge the credibility of the witnesses and the decree will be sustained unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law.' *In Interest of H.J.P.*, 669 S.W.2d 264, 270 (Mo.App.1984). *See also Juvenile Office of Cape Girardeau City v. M.E.J.*, 666 S.W.2d 957, 960 (Mo.App.1984)." *D.G.N.* at 912.

Applying that standard, it is apparent the evidence supports the judgment of terminating the parental rights of J.M. and M.K.M. in respect to the three younger children.

> "At the time DFS intervened, the family was without proper food and clothing, the electricity had been disconnected, and appellant feared imminent eviction. Appellant had mismanaged the financial aid she had received and had failed to apply for additional food stamps or AFDC benefits. The substance of the conditions which formed the basis to terminate parental rights was appellant's inability to properly support her children. The trial court found that appellant failed to rectify her inability to support the children because her employment was sporadic and her monthly earnings, of at most $180.00, would not cover housing, utility, food and clothing expenses. The court also found that appellant would not, even if given more time, rectify the conditions on a continuing basis because she repeatedly demonstrated a childlike dependence on others for her own basic support." *In Interest of A.M.K.*, 723 S.W.2d 50, 52 (Mo.App.1986).

Also see *In Interest of B.L.B.*, 834 S.W.2d 795 (Mo.App.1992).

The judgment of the Juvenile Division is affirmed.

MONTGOMERY, P.J., and PREWITT, J., concur.