In the Interest of L.M.B., J.M.B., C.E.B., and C.B., Respondent.

Juvenile Officer, Appellant,

v.

E.B. (Mother), Respondent,

C.B. (Father), Respondent.

No. WD 59093.

Missouri Court of Appeals, Western District.

Submitted April 18, 2001.

Decided May 22, 2001.

Mary A. Marquez, Kansas City, for appellant Juvenile Officer.

Steven D. Steinhelber, Kansas City, for Respondent E.B.

John M. Torrence, Kansas City, for Respondent C.B.

Katherine J. Rodgers, Kansas City, attorney and guardian for Respondent children.

Before EDWIN H. SMITH, P.J., SMART, and HOWARD, JJ.

PER CURIAM.

This is a termination of parental rights case. The trial court dismissed the Petition of Termination of Parental Rights after a two-day trial on the merits of the case. The Juvenile Officer appeals. Respondents E.B., the natural mother ("Mother") and C.B., the natural father ("Father") file separate briefs in response. The Guardian ad Litem joins the brief of the Juvenile Officer. We dismiss the appeal for lack of jurisdiction.

## Factual Background

Respondents Mother and Father have been married and living together as husband and wife for nearly twenty years. They have five children together.[1] On April 10, 1998, the Juvenile Officer filed petitions in the interest of the four youngest children, L.M.B., J.M.B., C.E.B. and C.A.B., pursuant to Section 211.031.1 RSMo., alleging that the children were without proper care, custody and support in that the children's father sexually abused L.M.B. The petitions further alleged that the children's Mother continues to allow the Father to have contact with the children. On August 11, 1998, the court in that proceeding entered a judgment in each of the cases, sustaining the allegations after a hearing. The Father and Mother stipulated to the abuse of L.M.B. by Father. The court found the children were at risk in that the Mother doubts the allegations made by L.M.B. and allows the Father continued contact with the children.

Pursuant to the judgment issued August 11, 1998, the children were placed in the care and custody of the Division of Family Services ("DFS"). The court entered a no contact order as to the Father except as therapeutically recommended. Contact with the Mother was contingent upon therapeutic recommendation as well. Apparently, at no time before or since August 11, 1998, has any child other than L.M.B. alleged that Father has sexually abused them.

During subsequent therapy sessions with the Father, the therapist concluded that the Father was not in fact guilty of sexual abuse, but had stipulated to such because he believed it would be less traumatic for the family. On or about September 15, 1999, both parents filed separate motions for a finding that termination of parental rights would not be in the best interest of the children. Father also moved for an order of visitation. The next day the Commissioner held an evidentiary hearing on the motions. Subsequently, the Commissioner entered his findings and recommendations, denying the parents' respective motions, and ordering DFS and the Juvenile Officer to take appropriate legal action to obtain termination of parental rights and adoption or guardianship. On the subject of the Father's abuse of the children the Commissioner stated:

> The Court further finds that while the mother does have a substantial relationship with the child, and has made efforts to reunify with the child, the mother's parenting deficits and failure to separate with the father in light of the father's refusal to realistically address the issues which brought the children within the Court's jurisdiction make reunification with her impossible at this time and in the near future. However, because of the therapist's highly inappropriate manner of treating the father, the Division of Family Services is directed to obtain the services of a therapist for the father who will properly and directly confront the issues which brought the children before the Court, and not make a determination that the issues do not indeed exist. This Court has already made a finding, based on the father's stipulation, that the issues are in the case and must be addressed, and no therapist shall make a determination otherwise. The father, mother, and indirectly the children have been seriously disserved by such conduct by the father's therapist.

---

1. The oldest child, now sixteen years old, is not a party to these proceedings nor to the Section 211.031 proceedings filed by the deputy juvenile officer ("DJO") in April of 1998.

The circuit court adopted the findings and recommendations without modification. On October 5, 1999, the parents filed motions for rehearing. On November 9, 1999, the circuit court denied the motion for rehearing stating in part:

The Court cannot reconsider the veracity of the underlying allegations at this stage. Father stipulated to those allegations on August 10, 1998, and the allegations were subsequently sustained. No timely challenge was raised to that judicial finding, which is res judicata. At this stage therefore, the truth of those allegations is no longer open to dispute. Having determined that the sexual abuse occurred, reunification can occur only if the issues underlying that abuse are directly and aggressively addressed by the parents.

The circuit court went on to note that the children had been in foster care for over fifteen of the last twenty-two months; thus, the court concluded, at least one of the statutory grounds for termination of parental rights was present.[2]

On or about November 24, 1999, the Juvenile Officer of Jackson County filed petitions seeking the termination of the parental rights for the four children in DFS's custody. The grounds for termination alleged in the petition were:

1. Father committed a severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family and the mother knew or should have known that such acts were being committed toward the child. Specifically, Father committed repeated acts of sexual abuse on the child, L.M.B. Father continues to deny the sexual abuse. Mother continues to doubt the sexu-

al abuse took place and continues to live with the Father.

2. The parents, although physically and financially able, repeatedly and continuously failed to provide the child with adequate food, clothing, shelter, education and other care and control necessary for the children's physical, mental and emotional health and development. Specifically, the parents have failed to provide support, financial or otherwise for the child since the child's placement into foster care.

3. The children have been under the jurisdiction of the Family Court Division for more than one year. The conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early date so that the children can be returned to the parents in the near future. Further, the continuation of the parent-child relations greatly diminishes the child's prospects for early integration into a stable and permanent home. Specifically, the parents have failed to participate in therapy to address the issues of sexual abuse. The father continues to deny that the sexual abuse occurred. The mother continues to doubt that the sexual abuse took placed. The parents have failed to progress enough so that reunification can occur in the reasonably foreseeable future.

After a two-day trial the trial court entered his judgment on September 9, 2000, denying the Petition for Termination of Parental Rights. The trial court held "it is the finding of this Court that the Petition of Juvenile Officer to Terminate Parental Rights has not been supported by clear, cogent and convincing evidence nor is ter-

**2.** Section 211.447.2(1) RSMo Cum.Supp. 1998.

mination of parental rights in the best interest of the juveniles herein." The court dismissed the petition but stated the matter was to be reviewed in each of the children's abuse and neglect cases "for the purpose of further efforts to accomplish reunification of this family." The trial court in denying the Petition stated in part:

It is the position of the Juvenile Officer and the Guardian Ad Litem that the "stipulation" of [father] is res judicata and cannot be challenged in this proceeding. The Eastern District Court of Appeals in their [1990] decision, *In the Interest of W.G. and E.G. v. P.[L.]G.*, 801 S.W.2d 85 held that the two statutory sections dealing with neglect and abuse and termination of parental rights "address different circumstances and therefore, cannot be considered to be the same cause of action having res judicata or estoppel effect." However, even if res judicata does apply in this instance, the overriding effect of the evidence in this case compels a finding that the best interest of the children herein involved compel the Court to look beyond a specific finding of abuse and take into account the following:

1) Two qualified therapists engaged by the Division of Family Services to work with [father], for reasons not necessary to be set forth in this judgment, [believes that father] may very well not have engaged in the abusive conduct alleged despite the "stipulation" made in the neglect and abuse proceeding.

2) With the exception of the "stipulation" [father] has consistently denied inappropriate conduct toward his daughter [L.M.B.].

3) The accusing child's own therapist, who has worked with her for a period of approximately two years, testified

that this young lady is "an accomplished liar."

4) [Father] has put forth a consistent effort to comply with the requests of the Division of Family Services to engage in therapy as directed to deal with anger control and improvement in parenting skills. The Division of Family Services therapists and [father] agree that in those areas [father] has worked and made significant progress.

5) There is no credible evidence that [father] has ever engaged in inappropriate sexual behavior with any other child or children.

6) [Father] testified that he entered into the "stipulation" because he did not "want to drag his family through the mud" and that he did not understand that it was a confession of the actual commission of the wrongful conduct alleged.

The Juvenile Officer takes exception to this portion of the judgment, interpreting it to be an erroneous holding that the trial court found the principles of res judicata did not bar the court from reconsidering a prior finding of fact that Father had sexually abused L.M.B. and the six factors specified by the court were actually findings consistent with the proposition that Father did not commit the acts of abuse.

Consequently, this appeal follows. Appellants preserved two points on appeal. First, that the trial court erred in denying the Juvenile Officer's petition because the court's decision was based upon an erroneous application of law in that the trial court failed to apply res judicata and collateral estoppel to preclude the court from reconsidering the findings of abuse and neglect in the prior juvenile custody judgment. Second, that the trial court erred even if it applied the principles of res judicata or collateral estoppel in that the

court's reliance on the best interest of the children standard was an erroneous application of law in that the court elevated the best interest standard above well established principles of law regarding collateral estoppel.

### Lack of Jurisdiction

Before this court can consider the merits of the Juvenile Officer's appeal, it must first determine whether jurisdiction is proper. While none of the parties address the issue of jurisdiction in their initial briefs, this court has a duty to determine *sua sponte* whether it has jurisdiction. *In re Marriage of Werths*, 33 S.W.3d 541, 542 (Mo. banc 2000); *Avidan v. Transit Cas. Co.*, 20 S.W.3d 521, 523 (Mo. banc 2000); *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). "A prerequisite to appellate review is that there be a final judgment. If there is no final judgment, this Court lacks jurisdiction and must dismiss the appeal. A judgment is final only if it leaves nothing for future determination." *Werths*, 33 S.W.3d at 542 (internal citations omitted). " 'If an intended judgment does not dispose of all issues and all parties in the case or does not form a final disposition of the matter, it is not a final, appealable judgment and we have no jurisdiction to entertain an attempted appeal therefrom.' " *Id.* (quoting *Avidan*, 20 S.W.3d at 523 (quoting *Wallace v. Hankins*, 541 S.W.2d 82, 84 (Mo.App.1976))).

This court was faced with a similar situation in the case of *In the Interest of R.D., v. I.D.*, 778 S.W.2d 848 (Mo.App.1989) when the guardian ad litem appealed after the trial court denied a petition to terminate the mother's parental rights. In *R.D.*, the juvenile officer filed a petition to terminate the mother's rights on the grounds "that continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home." *R.D.*, 778 S.W.2d at 849. More specifically, the petition focused on the mental condition of mother and her ability to knowingly provide the child with necessary care, custody and control. *Id.* The evidence showed that the child had been in foster care virtually since birth, that the mother had a history of mental illness which at times required hospitalization, and that when the mother went off her medication she was apt to lapse into a mental state involving possible hallucinations and delusions. *Id.* The evidence at trial further demonstrated that the child had a superior intellect and would qualify for accelerated educational programs; and that most recent to the trial the mother had been functioning normally, took care of the home for her husband and provided temporary care for a four-year-old boy while his parents were at work. *Id.* The court stated:

> The trial court entered its order denying the petition for termination finding that the evidence did not prove the mother unable to knowingly provide the child the necessary care, custody and control. The court also found that additional services would not be likely to bring about a lasting parental adjustment enabling a return of the child to the mother within an ascertainable time. The effect of the judgment was to continue the child in foster care.

*Id.* The guardian ad litem appealed, contending that the trial court erred when it failed to terminate the mother's parental rights, and asked the appellate court to remand for entry of findings that the guardian contended would demonstrate the causes for termination or, in the alternative, to enter an order of termination. *Id.*

In finding that there was not a final and appealable judgment, the judge wrote in part:

The effect of the judgment denying termination of parental rights and also denying a return of the child to its mother is to continue the pre-petition status of the case retaining the child under the jurisdiction of the juvenile court. The proceedings as to R.D. are therefore not concluded, first because the current foster care placement is by nature not permanent and, second, because the juvenile court's retention of jurisdiction over the child may at any time require intervention in matters affecting the child's welfare.

*Id.* at 850. Similarly, in the instant case the proceedings as to the children are not concluded. The children remain under the jurisdiction of the juvenile court and are returned to the pre-petition status. The children remain in foster care, which by its nature is not permanent. Finally, the court's intervention in matters affecting the children's welfare is clearly contemplated by the trial court when he ordered the matter to be reviewed in the neglect and abuse cases "for the purpose of further efforts to accomplish reunification of this family."

The ruling before us also does not preclude the filing and adjudication of a subsequent petition for termination of parental rights as to these children because the trial court's findings that the petition was not supported by clear, cogent and convincing evidence, and that termination was not in the children's best interest, relate only to the particular grounds pleaded in the petition. As explained in *R.D.*:

A further aspect of the case militates against a finding that the current judgment has the required elements of finality. The decision to deny termination amounts only to a holding that the juvenile officer failed to prove by clear, cogent and convincing evidence that particular ground on which the petition for termination relied. Because the court is charged with the duty of promoting the best interest and welfare of the child, § 211.433, it follows that the present judgment could not be construed to preclude the filing and adjudication of a subsequent petition for termination of parental rights as to this child based on other statutory grounds or, upon the same ground proved by additional evidence.

*Id.* Similarly, nothing prevents the Juvenile Officer from filing a subsequent petition for termination on the same statutory grounds as the instant petition if the Juvenile Officer believes at any point that he has additional evidence and arguments, including and in addition to the August 11, 1998, finding of sexual abuse[3] and the evidence presented in this proceeding.

One of the cases cited by the Juvenile Officer in his brief dealt with a situation in which the court had previously granted a petition for termination as to the two older children but dismissed the petition without prejudice and retained jurisdiction as to the three younger children. *In Interest of S.M., TM., W.M., J.M. and A.M. v. M.K.M.*, 841 S.W.2d 302 (Mo.App.1992). After a second petition for termination as to the younger children was filed and sustained by the trial court, the mother appealed, seeking to reverse the judgment of termination as to all five of the children claiming the earlier judgment had not been a final judgment in that it "adjudicated fewer than all the claims or the rights and liabilities of fewer than all of the parties." *Id.* at 306. The court held that the

---

3. We assume, without deciding, that the August 11, 1998, finding based on the stipulation is, as the Juvenile Officer argues, binding on the court in further proceedings. We need not reach that issue in deciding this matter.

previous judgment had been final as to the two older children:

> The 1990 judgment terminated the parental rights of [father] and [mother] as to the two older children but denied such relief as to the three younger children. It disposed of all issues and all parties to that proceeding or case to terminate parental rights. Even in the absence of an express reservation of jurisdiction over the three younger children, the Juvenile Division would retain jurisdiction over them as a consequence of adjudication of neglect and abuse under [the statute].
>
> For the reasons stated, the judgment terminating the parental rights of [father] and [mother] as to the two older children became final thirty days after it was entered.

*Id.* at 306–307.

The statement that the court "disposed of all issues and all parties to that proceeding or case to terminate parental rights" is based on the fact that the statutes governing a proceeding for the termination of parental rights contemplate that there will be a separate proceeding for each child. *Id.* at 306. The court would have retained jurisdiction of the three youngest children regardless of the expressed reservation of jurisdiction because of the prior adjudication of neglect and abuse. We believe that if the reviewing court had intended to hold that the denial of the petition was a final judgment as to the three younger children, the court would have expressly so stated. This is particularly true given the fact that the court cited and quoted *R.D.*, 778 S.W.2d at 850, in a footnote for the proposition that nothing barred the filing of a subsequent petition for termination of parental rights as to the three younger children. *In Interest of S.M.*, 841 S.W.2d at 305 n. 4.

The Guardian ad Litem suggests in a supplemental letter brief that the ruling of *R.D.* should be reconsidered because juvenile jurisdiction would continue regardless of either a denial or a grant of termination. Thus, says the Guardian ad Litem, it is illogical to allow appeal of a termination, but not allow appeal of a denial of termination. We decline to reconsider *R.D.* at this time, in view of the fact that the issue of whether *R.D.* should be reconsidered has not been fully developed by the parties.

### Conclusion

We hold the judgment denying termination of parental rights entered in this case is not a final appealable judgment. This appeal is dismissed for lack of jurisdiction and the cause remanded to the trial court for its continuing exercise of jurisdiction over the children. This disposition leaves open to the parties and to the court such further action as may be found to be in the best interests of the children.