In the Interest of K.S., D.S. and J.W.
and the Juvenile Officer,
Respondents,

v.

DIVISION OF FAMILY
SERVICES, Appellant.

No. WD 38262.

Missouri Court of Appeals,
Western District.

Jan. 13, 1987.

Audrey Bimby, Kansas City, for Juvenile Officer.

Sean McPartland and Neil Johnson, Kansas City, for Parents.

Dale N. Godfrey, Staff Atty.—Div. of Family Services, Kansas City.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The sole issue in this appeal is whether Jackson County or the State Division of Family Services (DFS) must pay the attorney's fees of private counsel appointed for indigent parents in an action where their parental rights were terminated. The trial court ordered DFS to pay the $6,556.25 in attorney fees and DFS appeals.

Section 211.462.1 RSMo Supp.1985 provides for the appointment of counsel for indigent parents in termination of parental rights proceedings. *A.M.G. v. Missouri Division of Family Services*, 660 S.W.2d 370, 371 (Mo.App.1983). Section 211.462.4 determines who pays the court costs in these proceedings:

> 4. Court costs shall be paid by the county in which the proceeding is instituted, except that the court may require the agency or person having or receiving legal or actual custody to pay the costs.

"Compensation to an attorney, who performs services that the statute necessitates, is a predictable 'cost' contemplated by the legislature." *A.M.G.*, *supra*, at 371; *L.R.R. v. Christian Family Services, Inc.*, 620 S.W.2d 14, 16 (Mo.App.1981). The term "agency" as used in the statute includes DFS. *A.M.G.*, *supra*, at 372.

The pivotal question then, is whether DFS had legal or actual custody of the children so as to be susceptible to attorney fees under the statute. A chronological summary of the events in the case helps answer this question and is provided below.

10–28–83 Juvenile Officer petitions court asking that the three children be detained with DFS Foster Care, placed

under DFS Supervision and detained with an aunt. The court, in its pre-printed form order, marked the box "DFS Family Foster Care" and the box "other." Under "other" the court wrote "relative." Since this date, the children have been detained with the aunt.

6–29–84  The court receives evidence, orders children "placed in custody of (aunt and uncle) under Supervision of DFS" and advises Juvenile Officer to file petition to terminate parental rights. The Commitment Order of 6–29–84 states children placed in "legal custody" of aunt and uncle.

7–16–84  Termination petitions filed alleging jurisdiction of court under § 211.-031 and 211.181 pertaining to neglected children, pursuant to 6–29–84 order. Petition alleges aunt and uncle have legal custody and are providing care for children.

7–18–85  Parents terminated after hearing. There had been four children—one died of malnutrition, the three here involved were suffering from neglect when the police picked them up. The fathers of two of the children did not contest termination. The attorney, Mr. Kitchen, was appointed to represent the mother and one father.

As demonstrated above, DFS never had actual custody of the children as they were detained with the aunt from October 28, 1983 on. Further, DFS did not have legal custody from June 29, 1984 through July 18, 1985. The commitment order and petitions filed during that period expressly place legal custody in the aunt and uncle. Consequently, the only period in which DFS possibly had legal custody is October 28, 1983 through June 29, 1984. However, the information in the court order of October 28 is sparse and does not exactly delineate who got legal or actual custody of the children. The court merely marked the box "DFS Family Foster Care" while simultaneously checking "other" and writing "relative." Had this been a truly Foster Care situation, DFS would have had legal custody while the licensed foster home persons had actual custody, *In Interest of R.K.W.*, 689 S.W.2d 647, 650 (Mo.App.1985). There was no formal award of legal custody by the court during the period from October, 1983 through June 29, 1984. At the very most, DFS became legal custodian on October 28 by negative implication since there was no formal order placing legal custody in the aunt.

■ Section 211.462.4 mandates that the county is to pay the attorney costs in termination of parental rights proceedings. The exception to the rule, which gives the trial judge some discretion, is that a person or agency with actual or legal custody may pay the costs. Here, the exception is not clearly applicable since it is not certain DFS ever had legal custody. To hold DFS liable for substantial attorney fees when its status as legal custodian is as tentative as it is here amounts to an abuse of discretion. This court may reverse an order taxing costs when an abuse of discretion appears. *Wells v. Orthwein*, 670 S.W.2d 529, 534 (Mo.App.1984).

The respondents in this case argue that DFS should pay the costs because DFS has "benefited" from the termination of parental rights proceedings. How DFS "benefited" is not apparent. In fact, this court is hard pressed to find a "benefit" to anyone in proceedings arising from the abuse and neglect of children. Regardless, DFS was never clearly awarded legal custody and thus does not fall within the provisions of § 211.462.4. The county, under the statute, should pay costs, which include the $6,556.25 in attorney fees.

The judgment for trial costs against DFS is reversed. Judgment is now entered in assessing trial costs against Jackson County which includes $6,556.25 in attorney's fees to John Kitchen for which execution shall issue. This court awards $1,000 to Mr. Kitchen, pursuant to a request for attorney fee's in this court, to be assessed against the county, for costs incurred on appeal, for which amount execution shall issue.

All concur.