**v.**

**A.O. (Mother), Respondent,**

**M.C. (Putative Father), Defendant,**

**and**

**Missouri Department of Social Services, Division of Family Services, Respondent.**

**Nos. WD 58895, WD 58997.**

Missouri Court of Appeals, Western District.

Submitted Sept. 20, 2001.

Decided Feb. 13, 2002.

Sanford Paul Krigel, Kansas City, for Appellant.

E. David Swartzbaugh, Kansas City, for Respondent A.O.

Mary Shemane Mann, Kansas City, for Respondent M.O.

Philip Dean Zuspan, Independence, for Respondent Social Services.

Before THOMAS H. NEWTON, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, Jr., JJ.

JAMES M. SMART, Jr., Judge.

This is an appeal of a judgment denying a petition for termination of parental rights and adoption. The child is M.O. (hereafter "Daughter"). The individuals who brought the petition are B.S. and C.B. (hereafter "Petitioners"). The natural mother is A.O. (hereafter "Mother"). On August 18, 2000, the court denied the petition for termination of parental rights as it pertained to Mother and granted the termination of parental rights as to the biological father of the child. The court directed the Division of Family Services (hereafter "DFS") to continue to provide services to Mother and Daughter to assist with reunification and increase contact and

visitation of Daughter with Mother. Petitioners appeal the denial of termination as to Mother, and the consequent dismissal of their petition for adoption. For the reasons stated herein, we vacate the judgment and remand the case to the trial court.

## Factual Background

Daughter is a little girl who was born June 25, 1998. Mother was not married. It was discovered at the time of her birth that Daughter was a "crack baby" due to Mother's addiction to crack cocaine. DFS took custody of Daughter. Mother failed to attend a meeting with DFS which had been scheduled several days later. Daughter was placed in a foster home; a month later, DFS moved Daughter to the foster care of Petitioners. Petitioners are two Roman Catholic nuns who operate an urban day care ministry. A half-brother of Daughter, Ronnie, was already living with the Petitioners in their foster care.

Daughter suffered severe physical problems and lack of emotional attachment at the time she came to live with the Petitioners. Under the nurturing care of Petitioners, the child made remarkable physical and emotional progress. As a two-year-old, she was, according to the trial court, a thriving child "full of energy, love, and contentment." Daughter's half-brother, Ronnie, was adopted by Petitioners in January 1999.

Mother was incarcerated as a result of a parole violation from the time Daughter was two months old until Daughter was six months old. While confined, Mother began contacting DFS concerning Daughter. After her release from confinement, Mother stated she wished to regain custody of Daughter. Mother was prohibited from seeing Daughter by a no-contact order. Mother began a drug treatment program as a condition of her parole. In March 1999, DFS recommended termination of Mother's parental rights as to Daughter and selected Petitioners as proposed adoptive parents. The Juvenile Officer filed a petition to terminate Mother's parental rights. In May 1999, with the consent of the Juvenile Officer, Petitioners filed their own petition to terminate parental rights of Mother and to obtain a decree of adoption as to Daughter. DFS subsequently decided not to pursue termination. The Juvenile Officer dismissed his petition. DFS workers reported that Mother was maintaining sobriety and progressing in the management of her life. Mother's no-contact order was removed. Mother and Daughter began having visitation and establishing familiarity. Petitioners nevertheless continued with their petition to terminate. In March and April 2000, the court held a hearing on the petition of Petitioners. The court denied the petition to terminate parental rights as to Mother, but granted termination as to the biological father. The court directed DFS to continue providing services to Mother and Daughter with a view toward reuniting Mother and Daughter.

A short time after that order, the North Star treatment program discharged Mother for attendance problems. Petitioners sought and obtained a new trial on the petition. In August, the court again took up the petition to terminate Mother's parental rights. The court, after hearing, again denied termination, finding that Mother had made much progress with her addictions. The court found that in spite of her discharge from the treatment program, Mother had maintained sobriety since August 1998, that Mother was continuing "to deal successfully with her chemical dependency," that Mother had successfully maintained employment for the previous seven months, and that Mother was making lifestyle changes that made reunification more possible in the near fu-

ture. The court again directed DFS to begin increasing contact between Daughter and Mother as a part of the process of reunification. Petitioners appeal the decision of the trial court to deny the termination of parental rights of Mother.

The Petitioners present six points on appeal. Four of the first five points challenge the evidentiary conclusions and factual findings of the trial court, contending that the court abused its discretion in failing to sever the parental rights of Mother. One point contends the court erred in failing to grant the Petitioners' motion for default judgment after Mother failed to respond to Petitioners' amended petition. The final point contends that the court erred in placing undue emphasis on the ages of the Petitioners in determining whether to terminate Mother's rights.

### Appealability

■ We turn first to the motion to dismiss filed by Mother and DFS. Movants argue that the ruling appealed from is not a final disposition of the issues and the parties and therefore is not an appealable judgment. The right to appeal is purely statutory, and appeal may be taken only from a final judgment. *Reis v. Peabody Coal Co.*, 935 S.W.2d 625 (Mo.App.1996); *see* § 512.020, RSMo 1996. Movants do not argue that the Petitioners, who seek to adopt Daughter, have no standing to appeal. Instead, Movants argue only that the judgment is not final, relying on *R.D. by Reine v. I.D.*, 778 S.W.2d 848 (Mo.App. 1989).

In *R.D.*, a guardian ad litem appealed the denial of the petition for termination, which had been instituted by a juvenile officer. The effect of the judgment was to continue the child in foster care. The guardian ad litem asserted that the trial court erred in failing to terminate the mother's parental rights. In dismissing

the appeal and remanding the cause to the trial court for its continuing exercise of jurisdiction over the child, this court noted that there was no precedent for the appeal of an order denying termination of parental rights. The court addressed the issue of appealability, noting that a denial of termination and also denying a return of the child to its mother "is to continue the pre-petition status of the case, retaining the child under the jurisdiction of the juvenile court." *R.D.*, 778 S.W.2d at 850. The court noted that the judgment "denying termination does not foreclose the prospect that another petition for termination may be presented to the court at a future date nor is the present judgment a bar to a later order of termination based on different grounds or additional evidence." *Id.* at 851.

■ The Movants contend that in this case, also, the trial court's decision does not have the required elements of finality. The trial court has retained jurisdiction over the child and may at any time intervene in matters affecting the child's welfare. The trial court is charged with the duty of promoting the best interests and welfare of the child, and as in *R.D.*, the movants say, the judgment in the case at hand does not preclude the filing and adjudication of any subsequent petitions for termination of parental rights as to the child.

We note that the trial court in this case, after denying the termination of parental rights, committed the child to the custody of DFS "for placement in the home of [Mother] until further order." The court also scheduled several follow-up hearings to receive evidence as to how the attempt to reunite Mother and Daughter is proceeding, and continues to monitor developments in the relationship between Mother and Daughter. The record filed in this

court fails to disclose the progress, or lack thereof, of those efforts.

Although Petitioners do not articulate how the effort to reunite Mother and Daughter, and the removal of Daughter from the care of Petitioners, will adversely affect any opportunity of Petitioners to ultimately adopt Daughter, it is obvious that there will be a permanent effect if the efforts to reunite Mother and Daughter are legally successful. Also, even though DFS has surely allowed Petitioners visitation with Daughter, the removal of Daughter from the home of Petitioners will tend, as a practical matter, to undermine any future opportunity to adopt Daughter, even if reunification is not completed.

The Petitioners note that this action for adoption was filed under Sections 453.010(3) and 453.040(8), even though there was an ongoing case under Chapter 211.[1] Section 453.040(8) provides that a party filing a petition to adopt under Chapter 453 may include a count in the petition seeking termination of parental rights on any of the grounds set forth in Section 211.447. The hearing on such proposed termination is to be conducted in accordance with §§ 211.442 to 211.487. Section 211.447.5 states that the juvenile court may terminate the parental rights of a parent to a child upon a petition filed by the juvenile officer, or, *in adoption cases,* by a prospective parent if the court finds grounds for termination exist as set forth therein. Petitioners point out that the separate statutory mention of adoption cases may suggest that the legislature viewed actions under Chapter 453 as substantially different from actions under Chapter 211 in important respects. Thus,

they suggest, *R.D.* is not at all applicable to a Chapter 453 proceeding.

No case has dealt squarely with the issue of whether an appeal of an action to terminate parental rights joined with an action for adoption under § 453 should be treated the same, for purposes of finality, as an appeal of a denial of termination of parental rights action which is brought by a juvenile officer under Chapter 211. The Petitioners do not argue that *R.D.* was wrongly decided. Rather, Petitioners argue merely that an action under Chapter 453 should be treated differently. They point out that the courts have held that a denial of a transfer for the purpose of adoption is appealable. *See In re Adoption of J.G.L., Jr.,* 853 S.W.2d 433 (Mo. App.1993); *In re Williams,* 672 S.W.2d 394 (Mo.App. banc 1984); and *In re M.D.H.,* 595 S.W.2d 448 (Mo.App.1980). In each of the cases under Chapter 453 relied upon by Petitioners, there was no issue as to the termination of parental rights. Thus, these cases are not directly on point.

We need not decide as a general rule whether *R.D.* is applicable to cases brought to terminate parental rights under Chapter 453, because we discern a key distinction between *R.D.* and the case before us, one not pointed out by the parties. A careful reading of *R.D.* shows that in *R.D.* our decision was based in part on the fact that judgment denying termination in that case also denied "a return of the child to its mother." *R.D.,* 778 S.W.2d at 850. Here, in contrast, after declining to sever Mother's rights, the court ordered a bonding assessment and directed that DFS be-

1. Our review of the decision of the Missouri Supreme Court in *In re J.F.K.,* 853 S.W.2d 932 (Mo. banc 1993) raises in our minds the issue of whether it was proper for the trial court to allow the action under Chapter 453 to proceed. Here, however, unlike in *J.F.K.,* this action was brought with the original concurrence and encouragement of DFS. Thus, there was apparently no conflict between the ongoing 211 proceeding and the Chapter 453 action.

gin a process of reuniting Mother and Daughter. Thereafter, the court, upon motion of the guardian ad litem, committed Daughter to the custody of DFS for placement of Daughter with Mother. The trial court continues to manage and monitor the welfare of Daughter and her relationship with Mother. If the court had simply denied termination of Mother's rights and retained Daughter in the current foster care placement with Petitioners, we assume that, under *R.D.*, the denial of termination would not be final and appealable. *See also In the Interest of L.M.B.*, 45 S.W.3d 892 (Mo.App.2001) (juvenile officer attempted to appeal a ruling denying termination; appeal dismissed on grounds that denial was not a final appealable decision). Here, however, because the court is pursuing reunification, *R.D.* is distinguishable.

The issue of whether the denial of termination is appealable is not a matter of statutory interpretation; the rule of finality adopted in *R.D.* was judicially created doctrine based on policy considerations and on recognition of the fact that in that case the denial was simply a return to the status quo. With *R.D.* being distinguishable, the next question is whether policy considerations applicable here dictate that the judgment be treated as not final. The Respondents fail to specify any such policy reasons.

Anytime we review an issue of child placement after a lengthy appeal process, there may be a concern as to how a reversal of the trial court judgment may affect the child. We do not, as a court whose function is strictly review, receive evidence as to the current circumstances affecting child and mother. Thus, we cannot know whether a decision to terminate Mother's rights after a lengthy appeal would cause new or additional harm to this child. There is always some trepidation involved

in the review of a judgment related to child placement. This trepidation is stronger than normal when a reversal of the judgment may require a belated termination of parental rights. Perhaps, for this reason, there would be a benefit to leaving the matter in the trial court (by way of a determination that the ruling is not final for purposes of appeal). Here, however, because *R.D.* is distinguishable and Respondents make no arguments beyond their reliance on *R.D.*, we will treat the judgment as final and appealable.

## Standard of Review

The statute provides that the court "may" order termination only if the court finds that the statutory grounds for termination were proven by "clear, cogent and convincing evidence":

> The juvenile court *may* terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interest of the child and it appears by clear, cogent, and convincing evidence that grounds exist for termination pursuant to subsection 2, 3, or 4 of this section.

Section 211.447.5 (emphasis added). Before it may terminate, the court must find by clear, cogent, and convincing evidence that a statutory ground for termination exists. *In Interest of C.M.M.*, 757 S.W.2d 601, 604 (Mo.App.1988). It is only after determination that one or more grounds for termination exists that the question of the child's best interests arises. *In Interest of R.H.S.*, 737 S.W.2d 227, 236 (Mo.App.1987). Whether statutory grounds have been proven by clear, cogent and convincing evidence is reviewed pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc

1984). However, review of the best interests of the child is pursuant to an abuse of discretion standard. *In re A.S.*, 38 S.W.3d 478, 486 (Mo.App.2001). The statutory phrase *"may* terminate the rights," indicates a great deal of discretion in the trial court. Here, the trial court did not specify that grounds for termination existed apart from the statutory presumption of unfitness arising from the fact that there had been two prior terminations of Mother's parental rights. Section 211.447.4(6). The court found that Mother had not abandoned Daughter. The court never specified a finding on the issue of neglect. The court did, however, rule that Petitioners had not shown that termination was in the best interest of the child. The trial court also found that the presumption of unfitness was rebutted by evidence showing a change in the conditions which led to the earlier terminations.

We apply the *Murphy v. Carron* standard of review to the first part of the trial court analysis (whether grounds to terminate exists). Here, the trial court did not specify grounds to terminate other than the statutory presumption of unfitness. The key part of the review in a *denial* of termination case would necessarily be the "best interests" issue, because even if the trial court has found statutory grounds to terminate, the court can still deny termination if the court does not believe termination to be in the best interest of the child. When reviewing an abuse of discretion, this court determines whether the ruling is so "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re A.S.*, 38 S.W.3d at 486; *Anglim v. Missouri Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). In *R.D.*, this court stated that a ruling denying termination of parental rights is "virtually immune from challenge by appeal," at least where the appellant claims "that the proof did suffice [to terminate] and that termination should have been ordered." *R.D.*, 778 S.W.2d at 850. The test, of course, is not whether the evidence shows that the termination of parental rights would be *justified.* The test is whether the evidence is such that it reasonably and logically leads to only one conclusion—that termination is *necessary* in the child's best interests. In evaluating the evidence, this court must view the evidence, and all reasonable inferences from the evidence, in the light most favorable to the decision. *In Interest of Y.M.H.*, 817 S.W.2d 279, 282 (Mo.App. 1991). This court will give "due deference" to the trial court's ability to determine the credibility of the witnesses. *Id.*

## Motion for Default Judgment

Before considering evidentiary issues, we turn first to the contention that the court erred in denying Petitioners' motion for default judgment under Rule 55.33(a) after Mother failed to timely file an answer to the First Amended Petition. On December 22, 1999, the Petitioners filed their First Amended Petition. The amended petition included a new allegation of abuse. Mother did not file her answer to the amended petition until February 4, 2000. On the first day of trial in March 2000, the Petitioners filed their motion for default judgment under Rule 55.33(a). They now contend that the court erred in failing to grant their motion. Respondents contend that Rule 55.33 does not even apply to an action governed by Chapter 211. In any event, Petitioners cite no authority for the proposition that the court was without discretion to deny the motion. Accordingly, the point is denied.

## Review of the Evidence

In this case, termination of parental rights was opposed by the guardian ad

litem, and DFS also recommended reunification with the Mother. There was, however, clearly evidence that would have supported termination. This Mother had previously had her parental rights terminated as to two other children. This raised a statutory presumption as to her lack of fitness. Section 211.447.4(6); *In the Interest of T.A.S. v. P.S.L.*, 32 S.W.3d 804, 813–14 (Mo.App.2000). Four other children had been removed from her care and had been placed in the guardianship of the maternal grandmother. Mother was cocaine addicted, had spent time in incarceration, had difficulty with chronic depression, was poorly educated, and, until recently, had a poor work history and lacked stable housing. In their first point related to the evidence, the Petitioners claim that the evidence related to Mother's purported progress in rehabilitation was not sufficient to overcome the presumption of unfitness because the evidence showed an extensive history of drug abuse, failure to successfully complete substance abuse treatment, failure to consistently take medication for depression, failure to regularly attend Narcotics Anonymous meetings, and failure to maintain employment and stable housing.

There is no dispute concerning the history of drug abuse. There was abundant evidence that Mother had problems with non-attendance and tardiness with the North Star program. She had 20 absences from January 6, 1999 to April 2000, and had made up only four of them. She was placed on a behavior contract because of her poor attendance. She did not meet the requirements of her behavior contract and was discharged from the program. Her therapists at North Star believed her commitment to recovery was "limited." There was, however, evidence favorable to Mother. Mother points out the following factors in the evidence:

Mother participated in one drug treatment program while incarcerated; Mother also completed two levels of the North Star program; although she was discharged from the program for absences, there was no evidence of relapse and Mother obtained release from parole; random urinalysis tests were conducted during the program, and Mother never tested positive for any drugs; Mother also voluntarily submitted to a hair analysis test designed to detect the presence of any drugs in the system for several previous months, and the test was negative; Mother was active in parenting classes and completed those classes; Mother participated in individual counseling and her therapist testified she was committed to getting her life back; Mother testified she attended NA/AA meetings and had a sponsor to assist her in maintaining sobriety; Mother consulted a psychiatrist concerning her depression and has cooperated with the doctor's instructions; Mother obtained employment in February 2000 and was maintaining that employment; and Mother was in the process of obtaining independent housing.

The trial court found that: 1) a psychological evaluation of Mother recommended she be considered for reunification; 2) Mother had participated in all services requested of her by DFS; 3) Mother had successfully completed parenting classes and her instructors vouched for her level of involvement; 4) Mother was participating in individual counseling, and the counselor testified that Mother is open and honest in counseling; 5) Mother has submitted to numerous random urinalysis tests and has not tested positive since August 1, 1998; 6) Mother testified she has been drug free since August 1998, and the court found that testimony credible; 7) the DFS parent aide testified that Mother's interaction with Daughter was good

and Daughter was responding affectionately to Mother; 8) Mother regularly attends AA/NA meetings and has a sponsor to assist her in maintaining sobriety; 9) Mother's depression is treatable, was being treated and did not impair her ability to parent; 10) although dismissed from the North Star treatment program due to absences, the "evidence from North Star was that Mother was successfully dealing with her addictions"; 11) the DFS case managers and their supervisor testified Mother was cooperative, progressing in services, and they believed that reunification was possible in the near future; 12) Mother had been employed for eight months prior to the judgment; 13) the testimony presented by Mother and the other witnesses in her behalf was credible and was sufficient to overcome the statutory presumption of unfitness. There was also evidence that Mother was providing increasing assistance to her mother with the care of her four guardianship children.

While Petitioners argue that the stronger credible evidence did not support some of the trial court's findings, the matter of the credibility of the witnesses remains primarily for the trial court. Accordingly, the issue of whether the statutory presumption of unfitness was rebutted is primarily for the trial court, and the evidence here is not such that we can declare as a matter of law that the presumption was not overcome. Petitioners also contend that the court's finding that Mother had not abandoned Daughter was not supported in the evidence. Although there was evidence Mother could have done more to relate to Daughter, there was also evidence of Mother's intent not to abandon Daughter and evidence that Mother's lack of contact with her daughter was due to the no-contact order. We cannot say this finding was clearly wrong.

■ Petitioners also contend that, in making the "best interests" determination, the court failed to give proper credence to the expert testimony presented by petitioners related to the adverse effect likely to be caused to Daughter by the removal of Daughter from the home of Petitioners. The court stated that it found much of the testimony to be so speculative as to be lacking in credibility. Again, this credibility call was for the trial court. *Y.M.H.*, 817 S.W.2d at 282.

The trial court made no specific finding concerning whether Mother had neglected Daughter, which was a matter clearly put in issue in the case. The lack of a specific finding on the issue of neglect in a *denial* of termination would not ordinarily be grounds to reverse and remand. If, however, there is an issue concerning whether the "best interests" determination was properly conducted, it may be necessary to remand. In this case, because the trial court did not apply the proper "best interests" test, it will be necessary to remand for a finding on the issue of neglect, as we will discuss more fully below.

Petitioners also argue that it is evident from the trial court's judgment that the trial court placed undue emphasis on the age of Petitioners and found, before the court even reached the issue of termination, that the age of Petitioners precluded the possibility that adoption by Petitioners could be in Daughter's best interest. Thus, they argue, the court got the cart before the horse, so to speak, and did so even though there was no finding that the health of the Petitioners was such as to make questionable the placement. They point to the following language of the trial court's findings of fact and conclusions of law:

> Petitioners have provided (Daughter) with a warm, loving and nurturing home which meets all her needs. Petitioners

have also helped (Daughter) overcome her medical and emotional difficulties resulting from Mother's cocaine use. (Daughter) is a thriving two-year old, who is full of energy, love and contentment. However, despite the benefits to (Daughter) from this association, the difference in age between (Daughter) and Petitioners may well create a substantial obstacle, either physically, mentally, or emotionally to the continued guidance and nurturing of a maturing child. This obstacle is recognized by Petitioners as evidenced by the "back up" placement arrangements made with witness Shields and witness Jacob–Davis. While age by itself does not disqualify Petitioners as potential adoptive parents it is an important factor to consider in determining the best interest of the child. Under the facts presented in evidence here permanent placement with Petitioners is not in (Daughter's) best interest.

■ Typically, in severing parental rights, the court is to consider the availability of adoption to the child. *See generally, e.g., T.A.S.,* 32 S.W.3d 804; *J.H.H. v. J.D.,* 662 S.W.2d 893 (Mo.App.1983). However, the court is not to consider the quality of a particular adoptive home. *See In re Trapp,* 593 S.W.2d 193, 205–06 (Mo. banc 1980) (fitness of foster parent to have custody is a "false issue" in a termination case). The proper approach in dealing with a contested termination under Chapter 453 would obviously be to avoid confusing the issues of termination and adoption. The termination issue must be considered first. Evidence that the Petitioners do or do not offer the most appropriate placement does not govern the issue of termination. *See Interest of D_L_C_,* 834 S.W.2d 760, 766–68 (Mo.App.1992). If it were otherwise, any person offering a wonderful home could successfully bring an action under Chapter 453 to adopt any child of a struggling parent merely by

proving that there had been neglect within the pertinent time period, and by proving the superiority of the home offered by the proponent. *See S.K.L. v. Smith,* 480 S.W.2d 119, 125 (Mo.App.1972) (parental rights may not be terminated on ground that the child would be "better off" in another home). The law is not so schizophrenic as to cause the degree of a parent's legal protection to depend upon whether a termination action is brought under Chapter 211 or Chapter 453. The General Assembly provided that the hearing in a Chapter 453 case would be conducted in the same way as a hearing in a Chapter 211 case.

Just as the trial court, in determining whether it is in the child's best interests to terminate Mother's rights, should not place undue emphasis on the positive aspects of the proposed adoptive home, so the trial court should not place undue emphasis on any aspect of the home of proposed adoptive parents which the court deems may render it unsuitable when the court has evidence before it, as in this case, that there is more than one available option as to adoptive homes. Otherwise, the court interferes with the possibility of adoption for the child merely because the court perceives a disadvantage with a particular adoptive home.

While the trial court has extremely broad discretion in determining the best interests of the child, the findings and conclusions of the trial court must not on their face allow the appearance that the trial court allowed confusion of the issues. Petitioners contend that it is obvious from the face of the order that the court allowed the age of Petitioners to govern all issues adjudicated. They claim the court gave undue emphasis to age. Petitioners are both in their sixties (63 and 66 at the time of trial). The evidence showed that both are active and energetic, and, based on

family history, may live lengthy lives. There is no indication, they say, that health is a problem with either one. They have recently been allowed to adopt two children, including Daughter's six-year-old half-brother and another child with multiple handicaps, without their ages being a substantial concern. They also presented the court with a back-up plan for Daughter's care if they should both die or become ill. Back-up plans are standard, say the Petitioners, and their back-up plan was not in any way a concession that there should be a concern about their ages.

The court maintains broad discretion on the issue of the significance of age in making the "best interests" determination. Therefore, we do not believe we can say as a matter of law the court placed too much emphasis on age. We note, however, that the court, in its findings, jumped to the matter of the Petitioners' ages (which relates to their suitability to adopt) before the court had addressed the issue of whether parental rights should properly be terminated. Because the case will be remanded anyway for reasons discussed below, the court should, on remand, address the termination issue first without any appearance that the age of the Petitioners may have influenced that determination.

### Proper Standard on "Best Interests" Issue

■ The trial court, in its findings, stated that the Petitioners had not proven by "clear, cogent and convincing evidence" that termination of parental rights was in the best interest of the child. As already noted, the "clear, cogent and convincing evidence standard" applies only to the statutory bases for termination and not to the "best interests" issue. *In Interest of W.S.M.*, 845 S.W.2d 147, 151 (Mo.App. 1993). Therefore, it appears the court did not apply the proper standard in deciding

the "best interests" issue. Because the "best interests" issue is so critical whenever a statutory ground for termination exists, we will vacate the judgment and remand the case to the trial court.

On remand, the court should initially state its finding on the issue of neglect. If the court finds neglect has not been shown by clear, cogent and convincing evidence, the court will have no authority to terminate parental rights, having found no grounds for such. If the court finds that neglect has been properly shown, the court must then determine whether termination is in the best interests of the child. In determining that issue, the court is to exercise its own discretion as to the best interests of the child without requiring Petitioners to *prove* termination is in the child's best interests by clear, cogent, and convincing evidence. We know of no specific judicial formula for determining "best interests." The trial court is to apply its foremost sound judgment, taking into account all relevant factors, in deciding what is best for this little girl. The dominant concern is the welfare of the child. *In Interest of N.D.*, 857 S.W.2d 835, 838 (Mo. App.1993).

The motion to dismiss is denied. The judgment is vacated and the case is remanded to the trial court for further proceedings consistent with this opinion.

The motion of Petitioners for an award of attorneys' fees and costs against the Division of Family Services relates to matters beyond this appeal. The trial court has not had an opportunity to rule upon the motion. The motion is also remanded to the trial court.

NEWTON, J., concurs.

LOWENSTEIN, J., concurs and files separate opinion.

HAROLD L. LOWENSTEIN, Judge, concurring.

I concur in the result that the case should be reversed and remanded for internal inconsistencies in the trial court's order. I do not concur as to language in the majority opinion relating to lack of finality where the foster care parents may still have custody. The interests of foster parents in their petition to adopt under chapter 453 are simply not the same as the juvenile officer or guardian ad litem in a case brought under the auspices of chapter 211. In a chapter 211 case, where the child is not returned to the natural parents, there is still continuing control and no finality. In a chapter 453 case, denial of termination defeats the adoption.

The majority opinion potentially dampens any attempt by prospective adoptive parents who are foster parents to seek appellate review or obtain relief from a juvenile court's decision denying the termination of the natural parents' rights portion of the adoptive parents petition brought under § 453.040(8).[1] Under § 453.040(8),[2] a person wishing to adopt can include a count for involuntary termination of parental rights under the same grounds and upon the same proof as required in § 211.447.

To deny jurisdiction of an appeal by prospective adoptive parents in a Chapter 453 proceeding, solely on the basis of lack of finality, which would be determined by whether or not the foster parents had physical custody at the time of the termination hearing, creates a Catch–22 situation. If the count for termination is in favor of the natural parent, the adoption proceeding is rendered dead—the adverse termination judgment, rightly or wrongly determined, is not appealable, but makes any adoption proceeding based on the facts as tried, finally at an end. "Consent of the natural parents or involuntary termination of their parental rights is a prerequisite to any adoption." *In re K.L.C.*, 9 S.W.3d 768, 772 (Mo.App.2000). Appellants in a § 453.040(8) case should be afforded the right to appeal—either from the denial of their first count for termination, or from the denial of their subsequent count for adoption, regardless of whether they have physical custody. The adverse ruling on either count effectively ends the purpose of their petition, which is the attempt to adopt. *K.L.C.* pointed clearly to termination being a prerequisite to an adoption count.

A similar situation occurred in *In re Williams*, 672 S.W.2d 394 (Mo.App.1984). The appellants there were prospective adoptive parents who did not have custody (the child was with a foster family under DFS supervision). The parents "voluntarily terminated" their parental rights. The appellants' petition sought to have custody transferred to them so they could adopt under Chapter 453. After denial of the custody petition and appeal, the Eastern District en banc first considered whether the ruling was appealable. The court said, "denial of transfer of custody, which is a prerequisite to this type of adoption, disposes of the adoption issue. Here the court order specifically denies the transfer of custody, which has the ef-

---

1. Under a chapter heading of "Adoption and Foster Care Adoption", Section 453.040(8) reads:

    A parent whose rights to the child may be terminated for any of the grounds set forth in section 211.447, RSMo, and whose rights have been terminated after hearing and proof of such grounds as required by sections 211.442 to 211.487, RSMo. Such petition of termination may be filed as a count in an adoption petition.

2. All further statutory references are to RSMo 2000.

fect of denying the petition for adoption. As all the issues are resolved, the order is appealable." *Id.* at 395. The only difference between *Williams* and this case is that the prerequisites of the prospective parents were different. In *Williams,* the appellants needed custody to adopt; here the appellants could not adopt unless parental rights were terminated.

Under § 512.020, any party aggrieved by a final judgment in any civil cause and not prohibited by the Constitution nor clearly limited by statute may appeal. There is nothing in Chapter 453 that in any way prohibits or limits a prospective parent from taking an appeal in a Chapter 453 adoption action. There is no suggestion here such persons are not "aggrieved" within the meaning of being able to prosecute an appeal. Since a movant in a Chapter 453 petition must by his or her first count seek and obtain a termination before addressing worthiness for adoption, denial of termination ends the matter. The petition to adopt is at an end. Under the majority's ruling that finality may be lacking and that another petition to terminate may later be brought, a serious and unanswered question remains as to whether *res judicata* and collateral estoppel apply to the facts relied upon in the Chapter 453 termination portion of the trial.

Finally, I would hold that *R.D. by Reine v. I.D.,* 778 S.W.2d 848 (Mo.App.1989) does not affect the disposition of the jurisdictional issue under the facts in this case, or in cases where foster parents maintain physical custody. These petitioners, in order to adopt, must terminate parental rights. Section 453.040(8) allows them to file a petition for termination as a count in their adoption petition. The absolute crux of the case at bar is whether there will be judicial review of the decision not to terminate on the facts adduced at trial. *R.D.* involved an appeal by a guardian ad litem in a chapter 211 termination brought by the juvenile officer. The trial court denied termination. Custody there never changed from the custodians, so the guardian's interest in the child's welfare was not compromised as would have been the case had the youngster been returned to a supposedly bad parent. *In Interest of L.M.B.,* 45 S.W.3d 892 (Mo.App.2001) differs from *R.D.* only in the aspect that the appellant was the juvenile officer.

The trial court's judgment in *R.D.* did not end the guardian's interest in the matter; such is not true in cases such as this one, which are initiated under chapter 453. The only possible bearing *R.D.* might have is dicta referring to the possibility of a later order of termination "based on different grounds or additional evidence." 778 S.W.2d at 851. This language lends some authority to the proposition that the grounds, facts and issues tried which resulted in the judgment entered by the trial court may not be relitigated in a subsequent termination action. If indeed the termination decision is truly not final as to the only party in a chapter 453 termination who would have standing to appeal a decision not to terminate, then it could be argued the same issues just tried could be relitigated in a subsequent action against the natural parent, either under § 211.447 or under chapter 453 by a private person seeking to adopt. Such a result would raise due process concerns vis-à-vis the natural parent. Moreover, it is arguable that relitigating the same issues could be barred by collateral estoppel or *res judicata,* thus harming petitioners under chapter 453.

Even though the right to appeal is purely statutory, appeals are to be favored, and in certain instances in the interest of justice aggrieved parties should be given the right to appeal. *In re Moore's Estate,* 354 Mo. 240, 189 S.W.2d 229, 233 (1945). The

policy of this state with reference to appeals has always been liberal. *In Re Doe Run Lead Co.*, 283 Mo. 646, 223 S.W. 600, 606 (1920). There is no statutory authority to deny appellate review to the adoptive parents of the juvenile court's determination on termination under a § 453.040(8) petition.

If the legislature decides there should be no appeal by foster parents seeking a termination prior to adoption, then it can say so. I would therefore delete from the majority opinion language implying a lack of finality as a bar to appealability under a § 453.040(8) petition. Other than these concerns, I concur with the majority.