**In the Interest of C.C.**

**Juvenile Officer and Missouri Department of Social Services, Division of Family Services, Respondents,**

v.

**S.C. (Natural Mother), Appellant,**

**S.A. (Putative Father) and John Doe (Putative Father), Defendants.**

**No. WD 58260.**

Missouri Court of Appeals, Western District.

Dec. 12, 2000.

Curtis G. Hanrahan, Jefferson City, for appellant.

Jeanne M. Gordon, Jefferson City, for respondent Juvenile Officer.

Roya R. Hough, Elizabeth A. LaFlamme, Jefferson City, for respondent DFS.

Kurt P. Valentine, Jefferson City, guardian ad litem.

Before BRECKENRIDGE, P.J., and ULRICH and HOWARD, JJ.

HOWARD, Judge.

The natural mother, S.C., appeals from the trial court's termination of her parental rights to C.C. S.C. raises two points on appeal. She contends that the trial court erred in terminating her parental rights because 1) the juvenile officer did not prove by clear, cogent and convincing evidence that she was unfit to be a party to the parent-child relationship in that there was no showing that the prior termination of parental rights cases relied on by the trial court were cognizable as a presumption of unfitness under § 211.447.4(6);[1] and 2) the juvenile officer did not prove by clear, cogent and convincing evidence that she was unfit to be a party to the parent-child relationship in that there was no appropriate showing of evidence that she was unfit.

We affirm.

### Facts

C.C., a girl, was born on August 21, 1999. S.C. is the natural mother of C.C. C.C. was taken into protective custody and placed under court jurisdiction pursuant to a temporary order entered on August 22, 1999 by the Juvenile Division of the Cole

---

1. All statutory references are to RSMo Cum. Supp.1999.

County Circuit Court. The order was made permanent by an order on September 2, 1999.

On August 31, 1999, the juvenile officer filed a petition for termination of parental rights against S.C. and John Doe, C.C.'s putative father. A motion for termination of visitation by the juvenile officer was granted on September 3, 1999. The court also dispensed with the requirement of reasonable efforts upon motion by the juvenile officer on September 3, 1999.

The juvenile officer filed a first amended and second amended petition for termination of parental rights on November 16, 1999, which named S.A. as the putative father of C.C. A third amended petition was filed on December 7, 1999, to include felony child abuse charges filed against S.A.

The termination hearing was held on December 8, 1999. Jason Taylor, a DFS social worker and C.C.'s caseworker, testified that S.C. has not provided any financial support for the cost, care or maintenance of C.C. since C.C. has been in protective custody. He further testified that S.C. has not had any contact with C.C. since C.C. has been in custody. He testified that S.C. has asked for visitation with C.C. and for photographs of her. Taylor further testified that he has not seen S.C.'s residence, although S.C. has requested him to do so. He testified that to his knowledge, S.C. has not been employed at any time since C.C. was born.

Two previous termination of parental rights proceedings involving S.C. became issues in this case. One occurred in Pennsylvania in 1999 and the other was a 1994 West Virginia case. S.C. testified that she was in a Pennsylvania jail from June 19, 1998 until November 24, 1999, when she was put in her mother's custody and required to go to Missouri. She testified that she was not given an opportunity to have an attorney appointed for her in the Pennsylvania termination case, nor was she ever advised of the termination hearing in that case. She testified that her

child, A.R.C., born in January 1998, was taken into custody by the State of Pennsylvania in May 1998. She testified that her parental rights were terminated in regard to D.J. and C.F. When asked if she had her parental rights terminated in regard to her child, T.W., born March 6, 1997, she responded, "not yet." She testified, "All my kids got taken when they were born. For what, they did not tell me."

On January 5, 2000, the trial court entered its judgment terminating the parental rights of S.C. and John Doe. The petition as to the allegations concerning S.A. was continued to a later date. This appeal follows.

### Standard of Review

We will affirm the trial court's judgment terminating parental rights unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re J.W.*, 11 S.W.3d 699, 703 (Mo.App. W.D.1999). We view the facts and all reasonable inferences arising therefrom in the light most favorable to the trial court's order. *Id.* We defer to the trial court on issues of witness credibility and choosing between conflicting evidence. *In Interest of T.H.*, 980 S.W.2d 608, 611 (Mo. App. W.D.1998).

### Argument

An order of termination must be supported by clear, cogent and convincing evidence that at least one of the grounds set out in § 211.447 exists, and the termination is in the child's best interests. *Id.* "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In Interest of J.M.*, 815 S.W.2d 97, 101 (Mo.App. W.D.1991).

## Point I

S.C.'s first point on appeal is that the trial court erred in terminating her parental rights because the juvenile officer did not prove by clear, cogent and convincing evidence that she was unfit to be a party to the parent-child relationship in that there was no showing that the prior termination of parental rights cases relied on by the trial court were cognizable as a presumption of unfitness under § 211.447.4(6).

Section 211.447 provides, in pertinent part, as follows:

4. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

. . .

(6) The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child. *It is presumed that a parent is unfit to be a party to the parent-child relationship upon a showing that within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated pursuant to subsection 2 or 3 of this section or subdivisions (1), (2), (3) or (4) of subsection 4 of this section or similar laws of other states.*

(Emphasis added.)

There were two prior terminations of mother's parental rights cited by the court:

1) the termination of rights to D.J., on January 6, 1999, in Pennsylvania; and 2) the termination of rights to C.F., on November 2, 1994, in West Virginia.[2] The court admitted into evidence the judgments of termination in both the cases and found as follows:

Pursuant to § 211.447.4(6) RSMo., [S.C.] is unfit to be a party to the parent-child relationship because [S.C.]'s parental rights to one or more other children were involuntarily terminated within the past three years under Section 211.447 RSMo., or under the similar law in another state in that her parental rights have been terminated on two children in the following cases: In Re: [D.J.], Case No. CYS–98–122, on January 6, 1999 in the Court of Common Pleas of Allegheny County, Pennsylvania; and in State of Missouri [sic] v. [C.F.] and [S.C.] and [C.F.], case no. 94–J–41 (F), on November 2, 1994.

Concerning the West Virginia termination judgment, S.C.'s counsel objected to the admission of that judgment on the basis that it was outside the permissible three-year time period. Counsel for the juvenile officer acknowledged that the termination was not within the three-year time period set forth in § 211.447.4(6), and stated that "it is relevant to the termination proceedings in that the court has to make a determination on whether or not the termination of the parental rights of [S.C.] is in the best interest of the child. . . . [I]t's relevant in that . . . she has had numerous TPRs, which has been consistent behavior, and, therefore, we believe it's relevant and should be admitted into evidence." The court stated that it was admitting the judgment subject to S.C.'s objection.

■ S.C. makes two claims in regard to the West Virginia termination. She claims the trial court erred in admitting this ter-

2. Although the trial court's judgment states that this termination took place in Missouri, the record indicates that it took place in West Virginia.

mination judgment into evidence and finding that this termination served as the basis for a presumption of unfitness under § 211.447.4(6) because 1) it took place more than three years before the termination in the present case; and 2) the trial court did not take notice of the West Virginia law that served as the basis for termination to determine whether it was similar to Missouri termination grounds, as required by § 211.447.4(6). She also argues that the trial court could not have properly taken notice of West Virginia law because there was no notice that it intended to rely on West Virginia law. We agree with S.C. that under the plain language of § 211.447.4(6), the West Virginia termination could not have served as a basis for the trial court's presumption of unfitness because it took place more than three years prior to the termination in the present case.

■ Concerning the Pennsylvania termination judgment, S.C.'s counsel stipulated to the admission of the judgment into evidence and specifically stated that he did not object to the court's taking judicial notice of it. He also stated, "I'd like to point out to the court that it does not reflect that [S.C.] was appointed counsel. And, in fact, the mailing certificate on the front does not indicate that she had counsel. We probably intend to make further challenges to this document after [S.C.]'s testimony." Following S.C.'s testimony, S.C.'s counsel stated as follows:

I would renew an additional objection to the order of January 6th, '99, regarding [D.J.], to the extent that [S.C.], whether or not she was served, is a subject matter jurisdiction question, which obviously we'd raise.

I'd also raise the point that it does not appear either from the face of the order or from the mailing of the order that [S.C.] was ever afforded counsel. In fact, by her testimony, she was compelled to leave the state of Pennsylvania and enter into her mother's care, which would have obviated her knowledge of

the hearing, and not being represented by counsel, she would have no other way to know.

I don't believe such an order would stand in Missouri, and, therefore, I'd ask that this court refuse to accept that as evidence of prior termination, and, therefore, deny the petition as filed.

* * * * *

No ruling was made on the objection.

S.C. now claims that the trial court erred in admitting the Pennsylvania termination judgment into evidence and finding that this termination served as the basis for a presumption of unfitness because the judgment does not disclose that 1) she had an attorney or that she was advised of her right to counsel; 2) she or counsel was present, appointed or notified; or 3) she was served. She further argues that the Pennsylvania order provides no basis for personal or subject matter jurisdiction. S.C. argues that it would be a denial of her due process rights for an out-of-state proceeding with substantive and procedural defects which would be impermissible in a Missouri proceeding to serve as the basis for a presumption of unfitness.

The Pennsylvania judgment provides as follows:

### DECREE

AND NOW, this 6th day of January, 1999, the foregoing Petition for Involuntary Termination of Parental Rights having come on to be heard, upon consideration thereof and of the supporting testimony and of the record, the Court finds that the facts averred in said Petition are true and that twelve months or more have elapsed from the date of removal or placement, and that the conditions which led to removal or placement continue to exist, and that the repeated and continued incapacity, abuse, neglect or refusal of [S.C.] has caused the minor, [D.J.], to be without essential parental care, control or subsistence necessary

for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by her and that the services and assistance reasonably available to the mother have not remedied the conditions which necessitated the removal of the minor by the court within a reasonable period of time and that termination of her parental rights would best serve the needs and welfare of the child, and that the prayer of the Petitioner should be granted;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, that all parental rights of [S.C.] to the minor, [D.J.], are hereby terminated, said termination to extinguish the power or the right of [S.C.] to object to or receive notice of adoption proceedings, and that the custody of the minor, [D.J.] is hereby awarded to the County of Allegheny.

In *State, Secretary of Social Rehabilitation Services v. Briggs*, 925 S.W.2d 892, 898 (Mo.App. W.D.1996), we held as follows:

Article IV, Section 1 of the United States Constitution precludes any inquiry into the merits of the cause of action, the legal consistency of the decision, or the validity of the legal principles upon which a judgment is based, and requires Missouri courts to give full faith and credit to judgments of the courts of sister states, unless it can be shown that there was a lack of jurisdiction over the subject matter, failure to give due notice, or fraud in concoction of the judgment. *Estate of Pettit v. Levine*, 657 S.W.2d 636, 640–41 (Mo.App.1983).

A judgment entered by a foreign court is presumed to be a judgment in a matter in which the court had jurisdiction over the parties and subject matter, and also that the court followed its laws and entered a valid judgment in accordance with the issues made in the case. *Id.* at 641. The burden is on the person´ resisting recognition of this judgment to

present evidence sufficient to rebut that presumption. *Kilgore v. Kilgore*, 666 S.W.2d 923, 932 (Mo.App.1984).

At the termination hearing, S.C. testified as follows:

Q. Now, during the time you were incarcerated in Pennsylvania did you receive termination papers with regard to [D.J.]?

A. No, I didn't.

Q. Did you ever—were you ever given the opportunity to have an attorney appointed for you in the termination case regarding [D.J.]?

A. No, I didn't.

Q. Were you ever advised of the termination hearing in January of 1999 regarding [D.J.]?

A. No, I haven't.

\* \* \* \* \*

Q. Now, you said that your parental rights to [D.J.], that that hearing—

A. I never had no papers, no nothing.

Q. Do you have any evidence of where you've contacted the court and notified them that you didn't receive notice?

A. I don't have anything to contact.

Q. Do you have any evidence at all that you—

A. I don't have anything.

Q. —that you did contact them?

A. I don't have anything. Nothing.

\* \* \* \* \*

■ The trial court is free to disbelieve all, part or none of the testimony of any witness. *In Interest of R.L.N.*, 886 S.W.2d 15, 19 (Mo.App. W.D.1994). The trial court was free to disbelieve the bare assertions by S.C. that she did not receive notice of the Pennsylvania termination proceeding and that she was not offered counsel in that proceeding.

■ S.C. further argues that it was incumbent upon the juvenile officer to introduce into evidence the Pennsylvania laws

which are similar to the sections referenced in § 211.447.4(6). S.C. raises this claim for the first time on appeal, and therefore she has failed to preserve it for appellate review. *In Interest of H.R.R.,* 945 S.W.2d 85, 89 (Mo.App. W.D.1997). We gratuitously note that the language of the Pennsylvania judgment indicates that S.C.'s parental rights were terminated pursuant to a law similar to § 211.447.4(3).

Point I is denied.

## Point II

S.C.'s second point on appeal is that the trial court erred in terminating her parental rights because the juvenile officer did not prove by clear, cogent and convincing evidence that she was unfit to be a party to the parent-child relationship in that there was no appropriate showing of evidence that she was unfit.

 "The presumption of unfitness is rebuttable and can be overcome by evidence that the circumstances that led to the termination of the parent's parental rights in the other child no longer exist or that the parent is no longer unfit." *In re A.H.,* 9 S.W.3d 56, 61 (Mo.App. W.D.2000).

We find that it was S.C.'s burden to present evidence that the circumstances that led to the termination of her rights in regard to D.J. no longer existed, or that she was no longer unfit. S.C. did not present any evidence that she has overcome the problems that led to the termination of her parental rights to D.J., nor did she present evidence to indicate that she was otherwise no longer unfit. We find that the trial court did not abuse its discretion in finding that S.C. did not present sufficient evidence to overcome the presumption of unfitness.

Point II is denied.

The judgment of the trial court is affirmed.

BRECKENRIDGE, P.J., and ULRICH, J., concur.