**In the Interest of E.D.M., Plaintiff.**

**Juvenile Officer, Missouri Division of Family Services, Respondents;**

**v.**

**E.L.M. (Natural Father), Appellant;**

**C.R.T. (Mother), Defendant.**

**No. WD 63008.**

Missouri Court of Appeals, Western District.

Feb. 17, 2004.

Robert D. Aulgur, Columbia, MO, for Plaintiff.

Melissa McAllister, Columbia, MO, for Respondent, Juvenile Officer.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Gary L. Gardner, Jefferson City, MO, for Respondent, DFS.

John D. Miller, Jefferson City, MO, for Appellant.

Samantha A. Harris, Columbia, MO, for Defendant.

Before RONALD R. HOLLIGER, P.J., ROBERT G. ULRICH and JAMES M. SMART, JJ.

ROBERT G. ULRICH, Judge.

E.L.M., natural father of E.D.M.,(Father) appeals the June 19, 2003, judgment terminating his parental rights with his child. The judgment terminated the parental rights of both Father and the child's mother.[1] The trial court relied on section 211.447.4(6),[2] which provides that prior involuntary termination of parental rights of other children for reasons articulated within the statute, within three years of the current termination of parental rights adjudication for the same parent, creates a presumption that the parent is unfit to parent the child subject to the current proceedings. Father asserts as point I on appeal that the court erred because his parental rights to another child were not involuntarily terminated within the three-year period immediately preceding the adjudication of his parental rights in the instant case. As point II, he asserts that section 211.447.4(6) violates Article I, Section 10 of the Missouri Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution if it is interpreted to provide that a default judgment is not a consent for the purpose of termination of parental rights. He claims as point III that the record demonstrates that he successfully rebutted the statutory presumption that he is unfit to parent his child. Finally, as point IV, he claims that the court's finding that terminating Father's parental rights was in the "best interests" of the child is not supported in the record

by clear, cogent and convincing evidence. The judgment is affirmed.

**Relevant Facts**

The county Juvenile Officer initiated proceedings to terminate the natural parents' rights with their child, E.D.M., on February 8, 2002. The amended petition alleged parental abuse and neglect of the child and parental unfitness. The petition also asserted parental unfitness because of the involuntary termination of the parent's parental rights to E.D.M.'s sibling.

Two prior cases involving termination of Father's parental rights to his children were offered as evidence and are relevant to the application of section 211.447.4(6) in this case. E.D.M.'s sibling, J.D.S., was found to have been abused and neglected in accordance with section 211.031.1(1) and was made a ward of the court. The court ordered the involuntary termination of Father's parental rights with J.D.S. in accordance with section 211.447.4(1) finding that Father had abandoned the child. T.L.M., another sibling of E.D.M.'s, was found by the court to have been abused and neglected pursuant to section 211.031.1(1) on July 8, 2002, and was made a ward of the court. The court ordered the involuntary termination of Father's parental rights with T.L.M. pursuant to sections 211.447.4(2) and (6) on August 12, 2002, finding that Father had abused or neglected T.L.M. and that Father was unfit to be a party in the parent/child relationship with T.L.M.

The Commissioner of the Juvenile Court heard evidence on April 10, 2003, and on May 13, 2003, the Commissioner entered her proposed findings and recommendations that, if adopted by the circuit judge, would terminate both parent's parental rights. The Commissioner's proposed

1. The child's mother does not appeal the judgment.

2. All statutory references are to RSMo 2000 unless otherwise indicated.

findings of fact and recommendations were adopted by the circuit court on June 19, 2003.[3] Father appeals the court's final judgment terminating his parental rights with E.D.M.

## Standard of Review

A reviewing court will affirm the trial court's judgment terminating parental rights unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re C.C.*, 32 S.W.3d 824, 826 (Mo.App. W.D.2000). The facts and all reasonable inferences arising therefrom are viewed in the light most favorable to the trial court's judgment. *Id.* The reviewing court defers to the trial court on issues of witness credibility and choosing between conflicting evidence. *Id.* At least one of the grounds stated in section 211.447 providing a basis to terminate a parent's parental rights must have been proved by clear, cogent and convincing evidence. *Id.* "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *Id.* (quoting *In the Interest of J.M.*, 815 S.W.2d 97, 101 (Mo. App. W.D.1991)).

## Discussion

### Point I

Father asserts as Point I on appeal that the trial court erred because his parental rights to another child were not involuntarily terminated, a requirement for the application of section 211.447.4(6), which constitutes a legal basis for termi-

nating parental rights with the child whose relationship with the parent is the subject of the legal proceedings. Respondent, Juvenile Officer, responds by asserting that the court premised its judgment on a second finding, also, that "the juvenile has been abused or neglected in that the juvenile's father was found to have known or should have known that the juvenile's mother had abused or neglected another child in the family." Respondent claims that this finding by the court is sufficient to terminate Father's parental rights regarding E.D.M. by reason of section 211.447.4(2) independent of section 211.447.4(6).

Section 211.447.5 provides that a parent's parental rights may be terminated when the adjudicating court finds that "termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section." Thus, one articulated statutory ground under section 211.447 is sufficient to support termination of parental rights if properly pleaded and proved. *In re N.M.J.*, 24 S.W.3d 771, 777 (Mo.App. W.D.2000). Because Father did not contest the court's finding that he abused or neglected the child, a basis by itself for terminating Father's parental rights, Respondent argues that only the second requirement for terminating Father's parental rights need be considered, that is, whether terminating Father's parental rights is in the best interest of the child. § 211.447.5. The court in finding that Father abused or neglected the child premised the finding on its determination that Father knew, or should have know, that the child's mother "had abused or neglected another child." Section 211.447.4(2) states that abuse and neglect of a child is a

---

3. The case pertaining to E.D.M. was consolidated with the cases pertaining to her sibling, D.E.M., and her half-siblings, T.T. and K.D.S., and they were heard at the same time.

basis for terminating a parent's parental rights regarding the child. Subparagraph (2) also states, however, that if abuse or neglect are the basis for terminating the parental rights of a parent that the court "shall consider and make findings" on four listed conditions or acts of the parent.[4] Because the court made no findings regarding the conditions or acts of Father as required by the statute after finding that the child had been abused or neglected and because the court's stated basis for finding the child had been abused or neglected was that of the child's mother's abuse or neglect of another child, insufficient legal basis exists for the court's determination under 211.447.4(2). Therefore, the court's finding under section 211.447.4(6) is considered.

Section 211.447.4(6) states, in pertinent part:

4. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

* * *

(6) The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child. *It is presumed that a parent is unfit to be a party to the parent-child relationship upon a showing that within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated pursuant to subsection 2 or 3 of this section or subdivisions (1), (2), (3) or (4) of subsection 4 of this section or similar laws of other states.*

(Emphasis added.)

Father attempts to distinguish involuntary from default proceedings. The essence of his claim in Point I is that the two prior proceedings involving other children in which his parental rights were terminated, which were offered to invoke the presumption under section 211.447.4(6) that

---

4. Section 211.447.4(2) provides:

The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

he was unfit to parent E.D.M., were not involuntary but were default proceedings because he did not enter his appearance and defend those cases after being served. Thus, he argues that subparagraph (6) of subsection 4 requires that for the statutory presumption to be effected the prior termination of parental rights must have been "involuntary." The implication is that because he defaulted and did not contest the two prior cases, Father voluntarily relinquished his parental rights in the two preceding cases.

Father's argument is without merit. The terms voluntary and involuntary as applied to the termination of parental rights are not analogous to contesting or not contesting the attempt to terminate parental rights under section 211.447.4. Section 211.447.4 provides the legal mechanism for the involuntary termination of parental rights. Section 211.444 provides the legal mechanism for voluntary termination of parental rights and contemplates the filing of a consent to terminate by a parent whose intent it is to terminate his parental rights with a specific child. Both statutes require the administration of a judicial officer. The nature of a voluntary proceeding under 211.444, initiated by the parent desiring to relinquish the parent's parental rights, precludes a default proceeding. Because the proceeding under 211.447.4 is initiated by the appropriate juvenile officer and involves service by some mechanism on the affected parent who may choose to waive the right to contest the termination proceedings, the parent may default by taking no action. This apparently is what occurred in the two cases preceding this case in which Father's parental rights were terminated. Those cases were initiated under 211.447.4, and Father's default did not change the nature of the proceeding from an involuntary to a voluntary proceeding. Therefore, Father's Point I is denied.

## Point II

As point II, Father asserts that if section 211.447.4(6) is interpreted to mean that a default judgment is not a consent for termination of parental rights for purposes of the statute, which is the interpretation under Point I, section 211.447.4(6) violates the Due Process Clause of Article I, Section 10 of the Missouri Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution. Father appears to contend that the application of section 211.447.4(6), which makes the termination of parental rights with one child the basis for the termination of another child if the prior proceeding occurred within three years of the second termination adjudication, violates constitutional due process requirements because notice of the use of the prior proceedings as a basis for terminating the parent's parental rights in a second proceeding was not provided to the parent.

Generally, a challenge to the constitutionality of a statute would divest this court of jurisdiction. Mo. Const. art. V, § 3; *Wright v. Mo. Dept. of Soc. Servs., Div. of Family Servs.*, 25 S.W.3d 525, 528 (Mo.App. W.D.2000). But "the mere assertion that a statute is unconstitutional does not deprive the court of appeals of jurisdiction. The constitutional issue must be real and substantial; not merely colorable." *Wright*, 25 S.W.3d at 528 (quoting *Schumann v. Mo. Highway & Transp. Comm'n*, 912 S.W.2d 548, 551 (Mo.App. W.D.1995)). A challenge may be deemed merely colorable if a "preliminary inquiry discloses the contention is so obviously unsubstantial and insufficient, either in fact or law, as to be plainly without merit and a mere pretense...." *Id.*(quoting *Kansas City Star Co. v. Shields*, 771 S.W.2d 101, 103 (Mo.App. W.D.1989)). Father's chal-

lenge to the constitutionality of section 221.447.4(6) is merely colorable, and this court has jurisdiction to decide this case.

Section 211.447.4(6), as a Missouri statute, is public information and has existed in its current form since 1998, and in Missouri, "[p]ersons are conclusively presumed to know the law." *Mo. Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 75 (Mo. banc 1990). The statute specifically states that prior judgments terminating the parental rights of a parent can serve as the basis to terminate the parental rights of the same parent provided the stated criteria are satisfied. The statute placed Father on notice that by defaulting in the two prior termination of parental rights cases, the termination of his parental rights could be used as a basis for terminating the parental rights of another child provided the evidence of the prior proceedings demonstrated that the proceedings occurred within three years from the adjudication determination in this case. The statute establishes a legal presumption of unfitness to parent the child for whom the proceeding is initiated. The presumption can be overcome, however, by presenting evidence that the circumstances that resulted in the prior termination no longer exist or that the parent is no longer unfit. *See In re C.C.*, 32 S.W.3d 824, 830 (Mo.App. W.D.2000). The statute requires that the parent be "currently unfit" to parent the child. *In re T.A.S.*, 32 S.W.3d 804, 815 (Mo.App. W.D.2000). Thus, the evidentiary result is that after the juvenile officer has proved the occurrence of the prior termination under section 211.447.4(6), the burden shifts to the parent. The statute provided sufficient notice to Father when he defaulted in the two prior parental termination proceedings of the effect of his failure to defend the allegations in those proceedings on any future similar proceedings initiated under section 211.447. Father's Point II is denied.

## Point III

Father claims as point III that the record demonstrates that he successfully rebutted the statutory presumption created by section 211.447.4(6) that he is unfit to parent E.D.M. He argues that the evidence showed that, given a chance, he could care for E.D.M. because he has successfully participated in the court plan for reunification with E.D.M.'s sibling, D.E.M.

As previously discussed, section 211.447.4(6) provides authority to terminate parental rights in a child based on parental unfitness. The statute creates a presumption that a parent is unfit when the parent's rights as to another child or other children have been involuntarily terminated under Missouri law or similar laws in other states within a three-year period immediately prior to the instant termination adjudication. *In re A.H.*, 9 S.W.3d 56, 61 (Mo.App. W.D.2000). "The presumption of unfitness is rebuttable and can be overcome by evidence that the circumstances that led to the termination of the parent's parental rights in the other child no longer exist or that the parent is no longer unfit." *Id.*

Two prior cases involving termination of Father's parental rights to E.D.M.'s siblings within three years immediately prior to the present adjudication were offered as evidence to create a presumption under section 211.447.4(6) that Father was unfit to be a party to the parent-child relationship with E.D.M. Regarding E.D.M.'s sibling, J.D.S., Father's parental rights were terminated based on the statutory ground of abandonment, section 211.447.4(1). The court found that Father had failed to contribute financially toward the care and maintenance of the child, consistently visit the child, regularly communicate with the child, or contact the Division of Family

Services (DFS) regarding the status or well being of the child. The court also found that Father had demonstrated a significant disinterest and lack of commitment toward the child.

In the second case regarding E.D.M.'s sibling, T.L.M., Father's parental rights were terminated based on the statutory grounds of abuse and neglect, section 211.447.4(2), and parental unfitness, section 211.447.4(6). Specifically, the court found that the child's mother had engaged in deliberate acts, those of drug use while pregnant with the child, and Father knew, or should have known, that such acts subjected the child to a substantial risk of physical or mental harm and that Father's parental rights in another child, J.D.S., were involuntarily terminated within three years immediately prior to that case. The court also found that Father had failed to maintain regular visitation or other contact with the child or provide for the cost of care and maintenance of the child and that he had demonstrated a disinterest in or lack of commitment to the child.

In this case, Father failed to demonstrate that the circumstances that led to the termination of his parental rights in J.D.S. and T.L.M. no longer existed or that he was no longer unfit. While evidence was offered that Father has participated in the court plan for reunification with E.D.M.'s sibling, D.E.M., the record revealed that the same behaviors that led to termination of Father's parental rights in E.D.M.'s other siblings were displayed by Father with respect to E.D.M. The evidence showed that during the time that E.D.M was in the custody of the DFS, Father did not make any contact, either written or verbal, with E.D.M. or her care providers nor did he provide any financial contribution toward the cost of her care and maintenance. Father also failed to contact the agency regarding the child's well being. He admitted at the hearing that since E.D.M. had been in the custody of the DFS, he had not sent cards or letters to the child or provided money or gifts for the child. When asked what steps he had taken to maintain a relationship with the child, Father replied, "Just in my prayers every night."

Additionally, the record revealed that Father was aware that E.D.M.'s mother had a drug problem. When asked if he feared for the child's safety because of her mother's drug use, Father replied that he did have some concerns. He admitted, however, that he did not contact authorities or therapists or attempt to take E.D.M. away from her mother over her mother's objections.[5] Finally, evidence was presented that the court ordered E.D.M. to be picked up and placed in protective custody, that Father was aware of the outstanding order for three to four months before the child was actually taken into protective custody, and that when questioned by the court as to E.D.M.'s whereabouts, Father gave a nonexistent address. In fact, Father admitted at the TPR hearing that he purposely lied to the court regarding E.D.M.'s whereabouts. Father failed to rebut the presumption of parental unfitness. Point III is denied.

### Point IV

■ In his final point on appeal, Father contends that the trial court erred in terminating his parental rights in E.D.M. because its finding that the best interest of the child required it was not supported by clear, cogent and convincing evidence.

---

5. Father did testify that he "called the hotline on [E.D.M.'s mother] one time, but they never did do anything." He, however, also acknowledged that E.D.M. could not be located by the court, law enforcement authorities, or the DFS.

As previously discussed, section 211.447.5 authorizes termination of parental rights if it finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of the statute. Contrary to Father's point relied on, the "clear, cogent and convincing evidence standard" applies only to the statutory bases for termination and not to the "best interests" issue. *In re M.O.,* 70 S.W.3d 579, 589 (Mo.App. W.D.2002). Instead, review of the best interest findings is for abuse of discretion. *Id.* at 585; *In re A.S.,* 38 S.W.3d 478, 486 (Mo.App. S.D.2001). A ruling will be reversed for abuse of discretion only when it is so "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *M.O.,* 70 S.W.3d at 585 (quoting *In re A.S.,* 38 S.W.3d at 486).

In determining whether termination of parental rights is in the best interest of the child, the trial court must evaluate and make findings on the factors of section 211.447.6 when appropriate and applicable to the case. *In re K.C.M.,* 85 S.W.3d 682, 692 (Mo.App. W.D.2002).[6] Those factors are:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

§ 211.447.6. In determining that termination of Father's parental rights was in the best interest of E.D.M., the trial court found that E.D.M. had little, if any, emotional ties to Father; that Father had not had any written or verbal contact with E.D.M. since she was placed into the custody of the DFS; that Father had failed to contact the DFS concerning the well being of E.D.M.; that Father had failed to make any financial contribution toward the care and maintenance of E.D.M. since she has been in DFS custody; and that Father's failure to seek out and participate in services in order to facilitate reunification or to overcome the presumption of unfitness evidences a disinterest in or lack of commitment to the child.

Review of the record reveals that the trial court did not abuse its discretion in finding that termination of Father's parental rights was in the child's best interest. Nothing in the record revealed that E.D.M., who was only sixteen months old

---

**6.** *Abrogated on other grounds by In re M.D.R.,* 124 S.W.3d 469 (Mo. banc 2004).

when she was initially placed in protective custody, had emotional ties to Father. Father argues that the trial court's order in September 2002 denying him visitation with the child "created this very issue by not permitting [him] to maintain a relationship with his daughter." While the trial court did deny Father's visitation with E.D.M., it did not prevent Father from maintaining verbal or written contact with the child. Father, however, had not made any contact with E.D.M. after she was placed in protective custody. He testified at trial that he had not sent cards or letters to E.D.M. When asked what steps he took to maintain a relationship with the child, Father responded, "Just in my prayers every night." Father also acknowledged that he had not contacted the DFS regarding the well being of the child since she entered DFS custody. Evidence was also offered that Father had not made any financial contribution to the cost of care and maintenance of E.D.M. while she was in the custody of the DFS. He admitted at trial that he had not provided any money or gifts for the child since she was taken into protective custody.

Besides its findings on the factors in section 211.447.6, the trial court cited additional reasons why termination of Father's parental rights was in the best interest of the child. Specifically, it noted that E.D.M.'s behavior significantly improved from the time she was placed in the custody of the DFS to the time of the hearing. When she was first placed in DFS custody, E.D.M. was very clingy and irritable, she had difficulty sleeping, and she would throw things and hit others. Eight months later, at the time of trial, E.D.M.'s behaviors were more appropriate. She had set boundaries, no longer exhibited major tantrums, refrained from hitting others, and was sleeping better. The court also noted that after being placed in protective custody, DFS discovered that

E.D.M. had not received some of her immunizations. Finally, the trial court found that Father knew for at least three to four months that the court had ordered E.D.M. picked up and placed in protective custody but failed to comply with the order and purposely misled the court as to the child's whereabouts by providing a nonexistent address for E.D.M. Substantial evidence in the record supported these additional findings by the trial court. The trial court did not abuse its discretion in finding that termination of Father's parental rights was in the best interest of the child. Point IV is denied.

The judgment terminating Father's parental rights to E.D.M. is affirmed.

HOLLIGER, P.J. and SMART, J. concur.